J. Bruce McCUBBREY et al., Plaintiffs,

v.

BOISE CASCADE HOME & LAND CORPORATION et al., Defendants.

No. C–72–0470 RFP.

United States District Court,
N. D. California.

March 29, 1976.

Robert B. Hutchinson, Cotchett & Hutchinson, San Mateo, Cal., Jerry Carr Whitehead, Breen, Young, Whitehead & Hoy, Reno, Nev., Richard N. Salle, Becklund, Siner, Taketa & Salle, San Jose, Cal., Frederick E. Watson, Martin Titcomb, San Francisco, Cal., John F. Wells and John F. Banker, Stark, Stewart, Simon & Sparrowe, Oakland, Cal., John J. Murray, San Francisco, Cal., Philip Mirecki, Los Angeles, Cal., Jerome Berg, San Francisco, Cal., Davis, Wendt & Mitchell, San Luis Obispo, Cal., Foster, Pryer, Antoncich & McCleerey, Inc., Monterey, Cal., Milton S. Weiss, Zief, Diment & Glickman, San Francisco, Cal., Maurile C. Tremblay, Wiles & Circuit, La Jolla, Cal., Walleck & Shane, Van Nuys, Cal., Thomas F. Vizzard, Rogers, Vizzard & Tallett, San Francisco, Cal., Gottlieb, Locke & Leeds, Los Angeles, Cal., Eric P. Schnurmacher, Barry R. Hirschfield, Levy & Van Bourg, Oakland, Cal., Bautista & Bautista, George G. Walker and Arthur Andreas, San Francisco, Cal., for plaintiffs.

J. C. Bensick, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendants.

### MEMORANDUM AND ORDER

PECKHAM, District Judge.

Petitioners Boise Cascade Corporation, Boise Cascade Recreational Communities of Delaware, Boise Cascade Properties, Inc., and Boise Cascade Home & Land Corporation ("Boise Cascade") seek an order enjoining the prosecution of twenty Superior Court actions presently pending throughout the state of California. This petition raises substantial questions concerning the scope of class action adjudications, the burden on class members to perfect technical compliance with exclusion procedures, the adequacy of notice to absent class members, and the finality of class action settlements.

### STATEMENT OF FACTS

Plaintiff J. Bruce McCubbrey filed a purported class action against Boise Cascade, alleging multiple misrepresentations in the sale of recreational subdivision property in California and Nevada. On March 9, 1973,

Barfield, Barfield, Dryden & Ruane, Ronald Lovitt and J. Thomas Hannan, Lovitt & Hannan, Thomas Elke, Burton J. Goldstein, P. M. Barceloux, Albert E. Levy and Ralph Golub, Goldstein, Barceloux & Goldstein, San Francisco, Cal., Joseph W. Cotchett and

this court entered a preliminary order certifying the plaintiff class under rule 23(b)(3) to include "all persons who are present or former owners of property in all Boise Cascade recreational subdivisions ('the property') listed in Exhibit A of the Settlement Agreement."[1] The order directed the parties to notify class members of the terms of a proposed settlement submitted to the court for approval. Accordingly, on March 24, 1973, a Notice of Proposed Class Action Settlement ("Notice") was sent by first-class mail to all persons whom Boise Cascade had recorded as the last known owners of property included in the proposed settlement. In addition to the postal notification, Boise Cascade placed a conspicuous notice of the settlement terms at each of its projects and published a Summary of Notice of Proposed Class Action Settlement in twenty newspapers.[2]

The Notice advised class members that Boise Cascade had offered to establish a restitution fund from which claims would be satisfied. The Notice outlined three options available to class members under the proposed settlement:

1. A class member could elect to remain in the suit, file no claim for a portion of the restitution fund, and retain any property purchased from Boise Cascade. The consequence of non-action was release of all claims against Boise Cascade.

2. A class member could elect to file a claim for a portion of the restitution fund;

the amount awarded was dependent upon the number of claimants against the fund. Under this option, class members were required to offer return of their land and to release all claims against Boise Cascade.

3. A class member could request exclusion from the class and the contemplated settlement. Under this alternative, a class member received no funds, but retained both his property and his right to proceed against Boise Cascade independently. The Notice detailed the exclusion procedure and specified that the deadline for exclusion requests was June 26, 1973.

On May 15, 1973, this court held a hearing to afford class members an opportunity to voice objections to the proposed settlement; on May 21, 1973, this court entered a final order certifying the plaintiff class and approving the settlement.

Petitioners now seek an order from this court enjoining twenty state court actions filed throughout the State of California. Petitioners claim that respondents, plaintiffs in the state court suits, are members of the *McCubbrey* class who failed to request exclusion within the specified opt-out period; accordingly, claim petitioners, the *res judicata* effect afforded class adjudications forever bars further litigation on the matters embraced by the *McCubbrey* suit.[3]

In determining the rights of the twenty respondents, we classify them according to

---

1. The class excluded certain persons who had purchased property prior to June, 1968, and certain wholesale purchasers. Neither of these excluded groups is involved in the present motion.

2. The order required two publications in each of the following newspapers: The San Francisco Chronicle, San Francisco Examiner, Los Angeles Times, Los Angeles Herald Examiner, San Diego Union, Sacramento Bee, Fresno Bee, Nevada State Journal, Wall Street Journal (National and West Coast editions), New York Times, San Jose Mercury News, Oakland Tribune, Grass Valley Union, Contra Costa Times, Richmond Independent, San Bernadino Sun and Evening Telegram, Riverside Press and Daily Enterprise, and Santa Ana Register.

3. Statutory authorization for this court to enter an order enjoining state court litigation is provided by 28 U.S.C. § 2283, which states:

 A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by an Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

 The third exception—"to protect or effectuate its judgments"—grants federal courts power to enjoin attempts to relitigate matters previously adjudicated. *See, Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1971); *Toucey v. New York Life Insurance Company,* 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed.2d 100 (1941); *United States v. American Society of Composers, Authors, and Publishers,* 442 F.2d 601 (2d Cir. 1971).

the option selected after receipt of the class action notice: ten respondents, electing the second option, obtained recovery from the restitution fund; ten respondents, electing the first option, filed neither settlement claims nor exclusion requests—they simply failed to act. The ten respondents who remained class members but did not participate in the settlement may be categorized according to the timing of their state court actions: (1) those who had filed suit prior to receipt of the class action notice; (2) those who filed suit after receipt of the settlement notice but prior to expiration of the exclusion period; and (3) those who filed suit after termination of the settlement period.

## DISCUSSION

### A. Class Members Who Participated in the Settlement

■ Ten of the respondents sought to be enjoined from further litigation against Boise Cascade elected not only to remain in the class but to file claims for a portion of the restitution fund. These participants in the class action settlement sought and obtained substantial recovery on their claims against Boise Cascade. We see no

basis, in law or equity, for permitting these respondents to seek double recovery by pressing state court litigation on matters embraced—and resolved—by the *McCubbrey* class suit. Our decision is reinforced by their silence: none of these respondents has filed an answer to the Boise Cascade petition, contending that the settlement notice was misleading or that the recovery from the restitution fund was in any way inequitable.

Accordingly, we grant petitioners' motion to enjoin each of the state court action prosecuted by the following respondents: Frederick and Rosalind Brisson;[4] Bullfrog Company;[5] Cal-Mark Associates, Inc.;[6] R. Marshall and Ann Jelderks;[7] Gustave and Jean Verdult;[8] Anita Waytz;[9] Mary Johnson;[10] J. Daniel and Vonda M. Tibbitts;[11] Robert C. and Lillian P. Tripp;[12] and Louis N. and Mary Menconi, Ted E. and Ruth E. Davids, and William P. and Marilyn Grant.[13]

### B. Respondents Who Neither Participated in the Settlement Nor Requested Exclusion From the Class

The remaining ten respondents sought to be enjoined filed neither claims for a por-

4. *Frederick Brisson, Rosalind R. Brisson vs. Boise Cascade Corporation et al.*, Superior Court of the State of California, County of Riverside, No. 109981.

5. *Degnan-Donohoe, Inc. a California corporation, and Bullfrog Company, a California corporation, vs. Boise Cascade Corporation, Boise Cascade Home and Land Corporation, et al,* Superior Court of the State of California, County of Santa Clara, No. F26506. Since Bullfrog's co-plaintiff in this action, Degnan-Donohoe, timely requested exclusion from the *McCubbrey* class, its suit will not be barred.

6. *Cal-Mark Associates, Inc., a California corporation vs. Boise Cascade, Inc., a California corporation, Boise Cascade Recreational Communities of Delaware, Boise Cascade Home and Land Sales Corporation, Inc.,* Superior Court of the State of California, County of San Francisco, No. 656-049.

7. *R. Marshall Jelderks, Ann Jelderks, Gustave J. Verdult, Jean M. Verdult, Anita Waytz, Peach Street Group, a partnership vs. Boise Cascade Recreation Communities Corporation, Boise Cascade Properties Sales Corporation,* *Boise Home and Land Corporation, Boise Cascade, Inc., Daniel E. Leffler, John J. Cox, et al,* Superior Court of the State of California, County of San Luis Obispo, No. 40038.

8. See No. 7 above.

9. See No. 7 above.

10. *Mary Johnson aka Mary Nemes vs. Boise Cascade Properties Inc. et al.,* Superior Court of the State of California, County of San Francisco, No. 664–619.

11. *J. Daniel Tibbitts and Vonda Tibbitts v. Boise Cascade Properties, Inc., Boise Cascade Corporation, et al,* Superior Court of the State of California, County of Monterey, No. 69593.

12. *Robert C. Tripp v. Boise Cascade Corporation,* Superior Court of the State of California, County of Alameda, No. 425485.

13. *Louis Menconi, Ted E. Davids and William Varni v. Pacific Cascade Land Company, Inc. et al,* Superior Court of the State of California, County of San Francisco, No. 647–499.

tion of the restitution fund nor requests for exclusion from the class; they simply failed to act.

█ Under rule 23(b)(3)'s "Book-of-the-Month Club" procedure, a final judgment in a class suit binds any member who fails to request exclusion. Where the binding effect of a class adjudication is later challenged, the court must scrutinize the record of the class litigation to determine (1) whether the person sought to be bound was a member of the class and (2) whether due process requirements were satisfied in the prior litigation. *Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1946); *Research Corporation v. Edward J. Frank & Sons,* 15 F.R.Serv.2d 580, 582 (N.D.Ind. 1971); Frankel, "Some Preliminary Observations Concerning Civil Rule 23," 43 F.R.D. 39, 46 (1967).

Applying these tests to the present case, we conclude that: (1) respondents prosecuting individual suits against Boise Cascade prior to receipt of the *McCubbrey* notice were afforded inadequate notice of the class settlement and are thus not bound by the class adjudication; (2) respondents who filed suit after receipt of the class action notice but prior to termination of the exclusion period effected substantial compliance with the opt-out requirement and are thus not bound by the class adjudication; and (3) respondents who instituted suit against Boise Cascade after termination of the exclusion period are bound by the judgment entered in the class action.

1. *Respondents who instituted suit against Boise Cascade prior to receipt of the notice of the proposed settlement of the class action.* Four of the respondents sought to be enjoined on the present motion

had instituted suits against Boise Cascade prior to receipt of the Notice detailing the proposed settlement of the class suit.[14] The issue raised by this aspect of Boise Cascade's petition is whether the *McCubbrey* notice adequately advised this group of respondents of their options under the contemplated settlement and the consequences of their alternative actions.

█ In evaluating the adequacy of a class action notice, we are guided by the constitutional standard articulated by the Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950):

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873.

█ Thus, under *Mullane,* reasonable notice of a class action settlement is a functional concept: due process demands that the options available to class members and the consequences of their elections be detailed with sufficient clarity to afford absent members a realistic opportunity to evaluate alternative options available to them. *See,* Dole, "The Settlement of Class Action for Damages," 71 Col.L.Rev. 971, 978 (1971).

█ In the present case, the Notice of the proposed settlement of the *McCubbrey* suit satisfied due process criteria as to the vast majority of class members; however,

---

**14.** The class action notice was mailed to members of the *McCubbrey* class on or about March 24, 1973. Isaac Poura commenced suit on October 29, 1971 (*Isaac Poura v. Boise Cascade Communities et al,* Superior Court of the State of California, Lake County, No. 11569); Antonio and Teresita David commenced suit against Boise Cascade on August 4, 1972 (*Antonio David and Teresita David v. Boise Cascade Properties, Inc.,* Superior Court of the State of California, Lake County, No. 11936; Mr. and Mrs. Richard Johnson and Mr. and Mrs. John

Skinner commenced suit against Boise Cascade on October 19, 1972 (*Walter A. Gray, Jr. et al vs. Boise Cascade Recreational Communities of Delaware, et al,* Superior Court of the State of California, County of Alameda, No. 429009); Clarence Kahm and Maxine Kahm commenced suit against Boise Cascade on February 5, 1973 (*Clarence Kahm and Maxine Kahm v. Boise Cascade Recreational Communities,* Superior Court of the State of California, County of Santa Clara, No. 285048).

as to the small group of individuals engaged in ongoing litigation against Boise Cascade, we must conclude that the Notice failed to perform its function of providing an adequate basis for informed decision-making. Nothing in the detailed, 29-page Notice would alert even a careful reader that he must satisfy the exclusion requirements or suffer the consequence of permitting his ongoing litigation to evaporate. The language of Option 1 (which respondents "elected" by failing to exclude themselves from the class) suggests that inaction will result in barring *future* litigation, not automatic termination of present suits. Nor does the language of Option 2 (specifying the opt-out procedure) advise class members that they *must* satisfy exclusion requirements to maintain the viability of independent litigation. From these serious omissions, we are compelled to conclude that the Notice did not provide respondents engaged in separate suits against Boise Cascade with adequate notice of their options under the proposed *McCubbrey* settlement.

Boise Cascade, however, strenuously urges that class members maintaining independent actions against a party opposing a class are entitled to no special notice. In support of this contention, Boise Cascade relies on *Supermarkets General Corp. v. Grinnell,* 59 F.R.D. 512 (S.D.N.Y.1973), *aff'd,* 490 F.2d 1183 (2d Cir. 1974). The trial court in *Grinnell* held that plaintiff Supermarkets General Corporation, engaged in independent litigation against defendant Grinnell prior to settlement of a class suit against Grinnell, was entitled only to "such notice as the members of the class were entitled to and did not gain additional rights because [it] had instituted an independent action." 59 F.R.D. at 514.

The appellate decision in *Grinnell,* however, clarifying the factual circumstances surrounding termination of the class litigation against defendant Grinnell, establishes that Supermarkets General Corporation had in fact received special treatment: plaintiffs engaged in independent actions against Grinnell designated a lead counsel who maintained communication with the class action plaintiffs' attorney. The liaison counsel specially advised the attorneys conducting independent suits of the contemplated class settlement. On these facts, the Second Circuit affirmed the trial court's exercise of discretion in refusing to exempt Supermarkets General Corporation from the class adjudication. In affirming, the Second Circuit suggested that due process might demand special notice to class members prosecuting independent actions:

> It might indeed be desirable for the future to include in orders under F.R.Civ.P. 23(c)(2) and 23(e) a provision that notice shall be sent to attorneys for all members of the class who, to a defendant's knowledge, have instituted individual actions, and for all members who have appeared by an attorney in the class action itself.

490 F.2d at 1186.

In contrast to *Grinnell,* respondents prosecuting independent actions against Boise Cascade received no informal notices regarding the settlement of the class suit. To the contrary, any communication with Boise Cascade counsel focused only on routine litigation details or future scheduling, implying by their silence that the state court actions were unaffected by the class adjudication. Thus, any misapprehension created by the Notice was not dispelled, but rather confirmed, by subsequent communication with Boise Cascade attorneys.

Finally, we observe that these respondents cannot be characterized as a passive group of "sideline sitters" whose failure to exclude themselves constituted a calculated attempt to await the outcome of the class suit and seek exclusion from an unfavorable judgment. Each of these individuals sought counsel, launched independent actions, and pursued discovery against Boise Cascade prior to the termination of the class suit. By failing to respond to the *McCubbrey* notice, these respondents gained nothing: they neither sought nor obtained any recovery from the restitution fund. Thus, the only reasonable interpretation of their failure to perfect exclusion from the *McCubbrey* class was that they

failed to appreciate the consequences of inaction. From our review of the terms of the class notice, we conclude that this misapprehension—shared by ten individuals—was reasonable. Accordingly, we hold that none of these respondents is barred from prosecuting an independent suit against Boise Cascade.

**2.** *Respondents who filed suit after receipt of the class action notice but prior to termination of the exclusion period.* Three of the respondents sought to be enjoined on the present motion filed suit against Boise Cascade after receipt of the class action notice but prior to the expiration of the exclusion period.[15] The issue raised by this aspect of the petition is whether filing a complaint against Boise Cascade constituted an effective expression of a class member's desire to opt out of the *McCubbrey* suit. We conclude that it does.

The class action notice mailed on March 24, 1973, outlined the following procedure for requesting exclusion from the *McCubbrey* class:

> *How to Request Exclusion—All Class Members.* You will be deemed a party to this action to be included in and bound by any and all judgments rendered in connection with this action *unless, on or before June 26, 1973, you mail a written request to be excluded from the Class.* Such a written request:
>
> (1) must furnish the following information: your name, your current address, and the number of your lots if any, and the name of the Boise project or projects in which the lot or lots are located.
>
> (2) must be mailed on or before June 26, 1973 to the following address:
>
> Attorney General
> P. O. Box 2374
> San Francisco, Calif. 94102

The Bellati, Reese and Sawyer respondents failed to send a written notice of exclusion to the Attorney General's office; rather, they each filed a complaint in San Francisco Superior Court and served it on the Home Office of Boise Cascade. Thus, they expressed a desire not to participate in the settlement in a written document containing the information requested in the class notice; however, this written document was not directed to the designated recipient. We are therefore confronted with the question of whether filing suit constitutes sufficient notice of exclusion from the class action under rule 23.

The authorities are in conflict as to the degree of latitude to be afforded an absent member seeking exclusion from a class suit. Several courts and commentators have espoused a rigid view and have demanded technical compliance with any procedures established for exclusion from a class. *In re Four Seasons Securities Litigation,* 502 F.2d 834 (10th Cir. 1974), *rev'g* 59 F.R.D. 667 (W.D.Okl.1973); *Brennan v. Midwestern Life Ins. Co.,* 450 F.2d 999 (7th Cir. 1971); *Mungin v. Florida East Coast Railway Company,* 318 F.Supp. 720 (M.D.Fla. 1970), *aff'd,* 441 F.2d 728 (5th Cir. 1971); *Philadelphia Anaconda American Brass Company,* 43 F.R.D. 452 (E.D.Pa.1968); Note, "Collateral Attack on Binding Effect of Class Action Judgments," 87 Harv.L.Rev. 589 (1974). These authorities have stressed that liberal relief from failure to follow requisite exclusion procedures will erode finality of complex adjudications, discourage class action settlements, permit return of the former option of one-way intervention, and place a burden on judicial resources. As the Tenth Circuit has stated, denying relief to a class member which failed to request exclusion from a class settlement during the period specified in the notice:

> *Reese v. Charles Kimball et al,* Superior Court of the State of California, County of San Francisco, No. 658–618); Howard G. Sawyer and Ernestine Sawyer filed suit on April 23, 1973 *(Howard G. Sawyer and Ernestine Sawyer v. Boise Cascade Properties, Inc.,* Superior Court of the State of California, County of San Francisco, No. 659–461).

---

15. The class action notice was mailed on or about March 24, 1973. The deadline for exclusion was June 26, 1973. Attilio and Lillian Bellati filed suit on May 22, 1973 *(Attilio Bellati and Lillian Bellati v. Boise Cascade Properties, Inc.,* Superior Court of the State of California, County of San Francisco, No. 661–045); Russell O. Reese and Helen M. Reese filed suit on April 4, 1973 *(Russell O. Reese and Helen M.*

In reaching this conclusion, we are guided by the purpose of the rule to prevent one-way intervention, the interests in the finality of judgments, and related case law precedent. To uphold the decision of the court below would, in our opinion, offer "a return to one-way intervention under a new guise." *Philadelphia Elec. Co. v. Anaconda Am. Brass Co.,* D.C., 43 F.R.D. 452, 459. *See* Note, Collateral Attack on the Binding Effect of Class Action Judgments, 87 Harvard Law Review 589, 601. Defendants would be placed in the difficult position of having to go through complex litigation a second time against parties that would have participated in the judgment had it been favorable to them, and, as appellants contend happened in the present case, the same arguments may be used against them which they had previously urged when they originally challenged the maintenance of the class action. The purpose of class actions is to avoid multiplicity of suits and upholding the decision of the court below would frustrate not only the interest in finality of judgments but also the interest in settlement of complex litigation.

*In re Four Seasons Securities Litigation,* 502 F.2d 834, 843–844 (10th Cir. 1974). Courts and commentators adopting the strict Tenth Circuit approach have essentially feared that liberal relief from binding class adjudications, permitting substantial or late compliance with exclusion procedures, will encourage collateral attacks on class adjudications, so that each class suit will become a hydra-headed monster triggering multiple subsidiary actions.[16]

Some authorities, however, have adopted a more liberal view of rule 23 and have counselled that any reasonable expression of a request for exclusion should serve to relieve a class member from a class suit. Thus, in *Bonner v. Texas City Independent School District of Texas,* 305 F.Supp. 600 (D.Tex.1969), the court held the trial testimony of three teachers expressing disapproval of the plaintiff's suit sufficient to constitute a request for exclusion from the plaintiff class. Noting the *Bonner* opinion with approval, Professors Wright and Miller have stated that "considerable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to exclude himself and any written evidence of it should suffice." 7A Wright and Miller, Federal Practice and Procedure, § 1787. Similarly, another commentator has stated that "The finality principle must be recognized as a concept representing the reconciliation of competing interests rather than as an absolute command." Note, "The Importance of Being Adequate: Due Process Requirements In Class Actions Under Federal Rule 23," 123 U.Pa.L.Rev. 1217, 1247 (1975).

The serious due process implications of holding an absent member bound by a class adjudication demand that we look beyond formalistic procedures to evaluate whether a class member has reasonably expressed a desire to be excluded from a class suit. Respondents in the present case, who drafted, filed and served a complaint, clearly made substantial efforts towards communicating a request for exclusion from the *McCubbrey* class. Certainly, this form of communication would satisfy Professors Wright and Miller and proponents of the liberal school of thought in class actions. Indeed, we believe that even the courts stressing the policy of finality in complex class adjudications would hold that these respondents had discharged their burden of

---

16. *See, e. g., Gregory v. Hershey,* 311 F.Supp. 1 (E.D.Mich.1969), *rev'd, sub nom Gregory v. Tarr,* 436 F.2d 513 (6th Cir. 1971). The *Gregory* litigation spawned multiple actions with conflicting results. *Whitmore v. Tarr,* 318 F.Supp. 1279 (D.Neb.1970), *vacated,* 443 F.2d 1370 (8th Cir. 1971), *on remand,* 331 F.Supp. 1369 (D.Neb.1971); *Germonprez v. Director of Selective Service,* 318 F.Supp. 829 (D.D.C. 1970); *Pasquier v. Tarr,* 318 F.Supp. 1350 (E.D. La.1970), *aff'd,* 444 F.2d 116 (5th Cir. 1971); *McCarthy v. Director of Selective Service System,* 322 F.Supp. 1032 (E.D.Wis.1970), *aff'd,* 460 F.2d 1089 (7th Cir. 1972); *Schrader v. Selective Service System, Local Bd. No. 76,* 329 F.Supp. 966 (W.D.Wis.1971), *rev'd,* 470 F.2d 73 (7th Cir. 1972), *on remand* 328 F.Supp. 891 (W.D.Wis.1971); *Zeilstra v. Tarr,* 466 F.2d 111 (6th Cir. 1972).

opting out of the class suit. In cases holding absent members bound by class adjudications, the members before the court had taken no steps to seek exclusion from the class, but had later petitioned the court for exclusion from the class judgment after termination of the opt-out period. These respondents, in contrast, instituted suit against Boise Cascade during the exclusion period; no reasonable person could view their conduct as expressing a desire to participate in the proposed settlement.

Petitioners urge, however, that because the *McCubbrey* class involved thousands of members, no settlement could be achieved unless class members cooperated to direct exclusion requests to a centralized location—the Attorney General's office. Petitioners claim that it would be unrealistic and unreasonable to compel Boise Cascade to monitor and compile varied forms of written exclusion requests submitted by class members to numerous locations. We agree that certain forms of expression might well, under the facts of this case, fail to advise petitioners effectively of a class member's desire to seek exclusion; a postcard mailed to a rural office of Boise Cascade might never find its way to the persons charged with administration of the class settlement. Multiplied by several hundred class members, informal written communications directed to numerous locations might place an intolerable administrative burden on a class defendant.

■ However, we are not called upon in this motion to define in detail what constitutes sufficient notice of a class member's request for exclusion, for it seems clear that institution of litigation, with its concomitant personal service of a complaint on a responsible officer of a corporation, constitutes an effective—indeed, strident—expression of a desire not to acquiesce in an impending class settlement. Moreover, the facts of this case establish that respondents' state court complaints (unlike a postcard)

received adequate attention from Boise Cascade and its attorneys. After receipt of the complaints, during the exclusion period, Boise Cascade counsel communicated with respondents' attorney to discuss the details of the litigation and to request additional time to file a responsive pleading. At no time during these communications did the Boise Cascade attorney advise respondents' counsel that the exclusion period in the *McCubbrey* case was ticking away and that the newly-filed state court actions would be forever barred unless respondents completed the opt-out procedures outlined in the settlement notice. The Boise Cascade attorney could easily have alerted respondents' counsel to the fact that petitioners did not consider respondents to have satisfied the exclusion requirements from the *McCubbrey* class; had respondents' counsel been so advised, he could have perfected exclusion from the class suit, since the specified period had not yet expired.

■ We appreciate that Boise Cascade retained separate counsel to represent its interests in the *McCubbrey* action and state litigation. However, we are unimpressed by petitioners' claim that compelling communications among various Boise Cascade attorneys concerning the status of Boise litigation would be unduly burdensome to the corporation;[17] if Boise Cascade elects to fragment its legal representation among numerous counsel it must assume the additional cost involved of advising them of pending Boise Cascade litigation matters. As stated in *Supermarkets General Corporation v. Grinnell,* 59 F.R.D. 512, (S.D.N.Y. 1973), a case often cited by petitioners, the breakdown of internal communication procedures in even the largest organizations will not justify lack of information.

Accordingly, we hold that the Bellati, Reese and Sawyer respondents effected exclusion from the *McCubbrey* class during the specified period and are not barred

---

17. The claim is particularly unimpressive in the present case, where the *Bellati, Reese, Sawyer* and *McCubbrey* actions were all filed in San Francisco. Moreover, the *McCubbrey* action was sufficiently important and well publicized that it appears highly unlikely that Boise Cascade counsel in the state litigation could be unaware of the settlement terms.

from prosecuting independent suits against Boise Cascade.

3. *Respondents who filed suit after termination of the exclusion period.* The final group of respondents sought to be enjoined from further litigation are individuals who instituted suit against Boise Cascade after expiration of the exclusion period in the class action. Two respondents have filed no answer to this petition; we conclude that they are members of the *McCubbrey* class and grant petitioners' motion to enjoin their pending state court litigation.[18] The remaining four respondents raise the following claims in seeking to avoid the *res judicata* bar of the *McCubbrey* suit: Earl and Janice Katzer ("Katzers")[19] claim that this court lacks in personam jurisdiction to render any decree affecting their rights on this motion; Lawrence and Adrienne Berger ("Bergers")[20] claim that since they purchased commercial and not residential property they are not members of the *McCubbrey* class; and both Katzers and Bergers claim that since they never received notice of the proposed settlement in *McCubbrey* they are relieved of any final judgment entered in that action.

a. *This court has jurisdiction over members of the plaintiff class in the McCubbrey suit.* Petitioners notified respondents of the present motion for an order enjoining state court litigation by postal service of the moving papers on respondents' counsel for the state litigation. Respondents Earl and Janice Katzer claim that because petitioners failed to effect personal service of the moving papers on the Katzers, this court lacks jurisdiction over them.

 This novel contention is diametrically opposed to the policy and structure of rule 23. Absent class members are parties to an action, properly before the court, and subject to its judicial orders. *Brennan v. Midwestern Life Ins. Co.,* 450 F.2d 999 (7th Cir. 1971); Homberger, "State Class Actions and the Federal Rule," 71 Col.L. Rev. 609, 645 (1971). Thus, petitioners were not required to effectuate personal service on respondents to bring them before this court; the method of notification was adequate and reasonable. *See, Supermarkets General Corporation v. Grinnell,* 490 F.2d 1183, 1186 (2d Cir. 1974).

b. *The Bergers are members of the class certified in the McCubbrey suit.* Respondents Lawrence and Adrienne Berger claim that they are not members of the *McCubbrey* class, which was defined as "All persons who are present or former owners of property in all Boise Cascade recreational subdivisions ('the property') listed in 'Exhibit A' to the Settlement Agreement." Stressing the term "recreational" in the class definition, these respondents assert that they purchased commercial lots from Boise Cascade and thus are not embraced in the *McCubbrey* class.

 The standard for determining inclusion in a class is rule 23's requirement of "typicality of claims and defenses:" an individual is deemed a class member if his claims are similar—not identical—to those asserted by the representative plaintiff. *In re Four Seasons Securities Litigation,* 502 F.2d 834, 840 (10th Cir. 1974). In determining whether an individual's case falls within the ambit of a class action, the central inquiry is whether his claims could have been asserted in the class suit:

> A final judgment on the merits by a court of competent jurisdiction binds the parties as to every matter which was or

---

18. Siv Nilsson, Henry Chang, Jr. and Constance Chang filed suit against Boise Cascade on May 7, 1975. *Siv Nilsson, Henry Chang, Jr. and Constance Chang v. Boise Cascade Home & Land Corporation et al.,* Superior Court of the State of California, County of Santa Clara, No. 329340.

19. Earl and Janice Katzer filed suit against Boise Cascade on October 30, 1974. *Earl D. Katzer and Janice Katzer v. Boise Cascade Home & Land Corporation, et al.,* Superior Court of the State of California, County of San Diego, No. 359572.

20. Lawrence and Adrienne Berger filed suit against Boise Cascade on March 4, 1974. *Lawrence E. Berger and Adrienne Berger, et al v. Bank of California, et al,* Superior Court of the State of California, County of Ventura, No. 56720.

could have been offered to sustain or defeat the cause of action . . . [this doctrine] applies to the members of a class before the court as well as to the representative parties.

*Jamerson v. Lennox,* 356 F.Supp. 1164, 1166 (E.D.Pa.1973). In determining the reach of class adjudications, courts have counselled affording broad scope to a class judgment to prevent unnecessary and belated harassment of class defendants. *International Prisoners' Union v. Rizzo,* 356 F.Supp. 806 (E.D.Pa.1973).

 Applying this standard to the present case leaves no doubt that the Bergers are members of the *McCubbrey* class. The class was defined to include "all purchasers" of property within recreational subdivisions; no limitation was placed on the alleged function of the land within recreational subdivisions and no distinction was drawn between residential and commercial lots. Moreover, the Bergers' claims not only "could have been," but, indeed, *were* asserted by the representative party in the *McCubbrey* suit: among the multiple misrepresentations allegedly made by Boise Cascade in connection with the sale of property was a claim "That certain purchasers' lots could be used for commercial development." (Amended Complaint, ¶ 25(99).) Thus, the record discloses that these respondents are members of the class certified in the *McCubbrey* action.

 c. *Respondents' alleged failure to receive the Notice does not relieve them from the res judicata effect of the class action judgment.* Petitioners' records establish that the Notice of proposed settlement was duly mailed to the last known addresses of the Berger and Katzer respondents. These respondents, however, contest receipt of notice.[21] The issue, therefore, presented by this aspect of the petition is whether petitioners have satisfied due process requirements by sending Notice of the proposed settlement by first class mail to absent members, and may therefore rely on the binding *res judicata* effect of the *McCubbrey* judgment to bar further litigation on matters embraced in the *McCubbrey* suit.

In the Advisory Committee note to the amended Federal Rules, the Committee stated that the notice provision of rule 23 had been fashioned to comply with the dictates of due process articulated in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). "Proposed Amendments to Rules of Civil Procedure for the United States District Courts," 39 F.R.D. 73, 107 (1966); *see also,* Kaplan, "Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)," 81 Harv. L.Rev. 356, 396 (1967). From the Advisory Committee Note, commentators uniformly concluded that rule 23's notice requirement incorporates *Mullane* guidelines. Miller, "Problems of Giving Notice in Class Actions," 58 F.R.D. 299, 319 (1973); Homberger, "State Class Actions and the Federal Rule," 71 Col.L.Rev. 609, 645 (1971); "Constitutional and Statutory Requirements of Giving Notice in Class Actions," 10 B.C.Ind. and Com.L.Rev., 571 (1969); Note, "Class Actions Under the Federal Rule 23(b)(3)— The Notice Requirement," 29 Md.L.Rev. 139 (1969). This approach, which equates the procedural requisites of Rule 23 with the constitutional mandate of *Mullane,* was given judicial imprimatur in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("Eisen IV"). See, Bennett, *"Eisen v. Carlisle & Jacquelin:* Supreme Court Calls for Revamping of Class Action Strategy," 1974 Wis.L.Rev. 801, 808 (1974).

---

21. Lawrence Berger submitted an affidavit stating: "I deny that I have ever received any written notice of Settlement or any other notification advising me of the various elections open to defendants." Adrienne Berger submitted an affidavit stating: "To the best of my knowledge I never received any written Notice of Settlement or other notification advising me of the various elections open to defendants." The record with respect to the Katzer respondents is unclear. Dr. Katzer testified at a deposition that he recalled receiving notice of the *McCubbrey* action; however, the Katzers' counsel has contested this assertion, without providing any competent, contradictory evidence.

In *Mullane,* the Supreme Court held that token efforts to notify absentees violated the command of due process. However, recognizing the flexibility inherent in the concept of due process, the Court expressly declined to require a notification procedure which would assure receipt of notice, i. e., personal service:

> Of course personal service . . . serves the end of actual and personal notice . . . However, no such service is required under the circumstances. This type of trust presupposes a large number of small interests. The individual interest does not stand alone but is identical with that of a class. The rights of each in the integrity of the fund and the fidelity of the trustee are shared by many other beneficiaries. *Therefore, notice reasonably certain to reach most of those interested in objecting is likely to safeguard the interests of all, since the objection sustained would inure to the benefit of all. We think that under such circumstances reasonable risks that notice might not actually reach every beneficiary are justifiable.*

339 U.S. at 319, 70 S.Ct. at 659, 94 L.Ed. at 876 (emphasis added).

In declining to impose a requirement of personal service on absentees and holding the less expensive postal service adequate to satisfy constitutional requirements, *Mullane* dictates only "best efforts"—not a guarantee of success. This approach has been espoused by several courts reviewing the adequacy of notice fashioned for large class actions. *Grunin v. International House of Pancakes,* 513 F.2d 114 (8th Cir. 1975) (postal notice in large class suit against franchisor held adequate although record disclosed that approximately 90 class members failed to receive notice); *State of West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079 (2d Cir. 1971) (notice to large class upheld although court recognized that members might fail to receive notice, would recover no funds from settlement and would be barred from further litigation). *See also, Supermarkets General Corporation v. Grinnell,* 2 Cir., 59 F.R.D. 512, *aff'd* 490 F.2d 1183 (2d Cir. 1974); Jacoby and Cher-

vasky, "The Effects of Eisen IV and Proposed Amendments to Federal Rule 23," 12 San Diego L.Rev. 1 (1974).

■ Finally, we believe that the language and logic of the Supreme Court opinion in *Eisen IV* compel a conclusion that a class adjudication may not be upset on the grounds of nonreceipt of notice. The Court in *Eisen* unequivocally ruled that the representative plaintiff, not the defendant, must shoulder the expense of notifying absent class members. To say that class members who do not receive notice may request exclusion from a class adjudication months—perhaps years—after termination of the litigation would mean that while the plaintiff bore the cost of notice, the defendant bore the risk of the plaintiff's (or Post Office's) mistakes. We cannot believe that the Supreme Court would espouse so anomalous a result.

In the present case, petitioners not only mailed first class notice to all class members, but posted conspicuous notice of the proposed settlement at every Boise Cascade project included in the suit, and published summaries of the Notice on two occasions in twenty newspapers. Due process demands no more.

## CONCLUSION

For the reasons outlined in this opinion, we grant petitioners' motion to enjoin the pending state actions prosecuted by the following respondents: Frederick and Rosalind Brisson; Bullfrog Company; Cal-Mark Associates, Inc.; R. Marshall and Ann Jelderks; Gustave and Jean Verdult; Anita Waytz; Mary Johnson; J. Daniel and Vonda M. Tibbitts; Robert C. and Lillian P. Tripp; Louis N. and Mary A. Menconi; Ted E. and Ruth E. Davids; William P. and Marilyn Grant; Earl D. and Janice Katzer; Siv Nilsson; Henry Chang, Jr. and Constance Chang; Lawrence E. and Adrienne Berger.

We hold that the following respondents are not barred from further litigation against Boise Cascade: Clarence and Maxine Kahm; Atillio and Lillian Ballati; An-

tonio and Teresita David; Isaac Poura; Russell O. and Helen M. Reese; Howard G. and Ernestine Sawyer; Mr. and Mrs. Richard Johnson; Mr. and Mrs. John Skinner and Ralph Skinner.

IT IS SO ORDERED.