TRIST et al.

v.

**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF CHESTER et al.**

Civ. A. No. 72–1599.

United States District Court,
E. D. Pennsylvania.

July 24, 1980.

See also, D.C., 89 F.R.D. 4, D.C., 89 F.R.D. 8.

David J. Ackerman, Morris M. Shuster, Herbert B. Newberg, Philadelphia, Pa., for plaintiffs.

Walter R. Milbourne, Philadelphia, Pa., for defendants.

OPINION

JOSEPH S. LORD, III, Chief Judge.

Defendants have moved under Fed.R. Civ.P. 23(c)(1) to exclude from the plaintiff class described in my orders of October 18, 1976, January 18, 1977, and March 30, 1978 certain persons who failed to receive notice of the pendency of the class action or of the proposed settlement. This motion is pressed in contemplation of final approval of the settlement with an eye toward the description of the class which must be contained in a class action judgment. Fed.R. Civ.P. 23(c)(3).

Rule 23 imposes two separate mandatory notice requirements in an action such as this one maintained under section (b)(3) of the Rule. Section (c)(2) requires that class members be informed by "the best notice practicable" of their right to opt out of the action or to enter an appearance and of the binding effect of a class judgment on those who fail to exclude themselves. Section (e) provides in less specific terms that notice of a proposed compromise "shall be given to all members of the class in such manner as the court directs." The class members sought to be excluded fall into three categories: (1) those who were sent but did not receive notice of the settlement; (2) those who were not sent notice of the settlement; and (3) those who were not sent notice of the pendency of the class action in the first instance.

The first category, by far the largest, consists of 3,161 class members for whom the notices of proposed settlement mailed in February 1980 were returned undelivered by the Postal Service. More than half of the notices could not be delivered because the forwarding address had expired. The others were returned for various deficiencies in the address. Defendants ask that these 3,161 class members be excluded from the benefits of the proposed settlement because they failed to receive notice of the compromise, even though they were given initial notice under section (c)(3) and were mailed notice of the compromise at their last known address.

In keeping with the intent of the Advisory Committee for the 1966 Amendments to Rule 23, this circuit has recognized that "the notice procedures utilized in class actions are of constitutional significance and must themselves be viewed in due process terms." *Greenfield v. Villager Industries, Inc.,* 483 F.2d 824, 833–34 (3d Cir. 1973). The standard applied to the settlement notice challenged in *Greenfield* was the flexible concept of due process described in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). *Mullane* has never been interpreted to require the sort of actual notice demanded by the defendants, but rather only notice reasonably calculated to apprise interested parties of the nature of the settlement and afford them an opportunity to object. *See McCubbrey v. Boise Cascade Home & Land Corp.,* 71 F.R.D. 62, 73 (N.D.Cal.1976). In *Mullane* itself the Court declined to impose the rigors of actual notice on the representative party, reasoning that such a requirement would be of little use due to the identity of interest shared among the absentee parties: "[N]otice reasonably certain to reach most of those interested in objecting is likely to safeguard the interests of all, since the objection sustained would inure to the benefit of all. We think that under such circumstances reasonable risks that notice might not actually reach every beneficiary are justifiable." 339 U.S. at 319, 70 S.Ct. at 659.

■ I am not persuaded that these class members should be excluded. Defendants do not contend that the class representatives failed to give notice in the manner approved by the court or that the approved manner was not reasonably calculated to inform the class of the terms of the settlement. The parties agreed to the type of notice–individual mail to the last known address. Moreover, this type of notice was approved by the Supreme Court under the exacting "best practicable" standard of section (c)(2) in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). So long as notice of settlement meets the "reasonably calculated" standard of *Mullane,* Rule 23(e) does not require actual notice. In this case because of the vagaries of time approximately 3,200 of over 25,000 notices, or roughly one–eighth, could not be delivered. Far worse percentages have been approved. *See Grunin v. International House of Pancakes,* 513 F.2d 114 (8th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975) (one third of class members not reached by mailing).

■ The second category sought to be excluded, like the first, did not receive notice of the proposed settlement. These thirty-seven class members differ from the first group only because the reason they failed to

receive the notice was that none was sent, apparently due to clerical error. The justification for excluding these persons seems to be that no attempt was made to give them notice and Rule 23(e) requires that notice of compromise "*shall* be given to *all* members of the class in such manner as the court directs" (emphasis added).

Although a distinction between notice sent but not received and notice not sent at all seems to offer a bright line, nothing in *Greenfield* or *Mullane* argues for importing such a distinction into Rule 23(e). Nor does sound policy support reading section (e)'s mandatory language to demand a perfect mailing, at least with numbers as large as those in this case. Barring some systematic exclusion of a particular category of class members, there is no reason why the validity of undelivered notices should turn on whether they slipped through the figurative crack before or after reaching the post office. Certainly the distinction is without a difference from the non–recipient's point of view, and exclusion from the class at this point could cause serious unfairness since all class members in this category received initial notice under section (c)(2) and thus, at least in theory, could have relied upon the class action in forbearance of their individual rights of action.

An alternative approach would be to give notice now and allow these persons time to examine the settlement and make objections. This procedure is appealing since these thirty-seven have been deprived of any opportunity to oppose the proposed settlement. But there is no guarantee that these were the only ones not sent notice. Indeed, in view of the numbers involved it would be surprising if there were not others. The failure to send notice to 37 or even 137 must be considered together with the fact that notice was given to 25,000 other similarly situated class members without provoking a single objection. Since there is no reason to believe that these thirty-seven were not randomly distributed, the chance that one of them would take advantage of an opportunity to object is miniscule. Posed against the chimerical prospect of objections is the tangible dis-

service to thousands of class members of further delay in receiving benefits due under the proposed settlement. Under these circumstances, I will deny the motion to exclude these persons from the class without requiring that they be given notice of the proposed settlement.

■ The third group sought to be excluded consists of 191 persons who were not sent notice in 1977 of the pendency of the class action as required by section (c)(2). In contrast to the discretion enjoyed by the district court in prescribing the manner of notice under section (e), individual notice to identifiable class members in a section (b)(3) action "is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23." *Eisen, supra,* 417 U.S. at 176, 94 S.Ct. at 2151. These persons to whom no notice was "directed" would plainly not be bound by a judgment in this action–precisely the reason why the notice requirement of (c)(2) was interpreted so stringently in *Eisen.*

While it would be unfortunate for these 191 people not to receive a benefit otherwise due them through no fault of their own, the unfairness is mitigated by the fact that they were no less free than the named plaintiffs to bring their own actions. Unlike those in either of the other challenged categories, they clearly did not rely upon the class action to vindicate their rights. In this sense, they will not be deprived of anything by exclusion, as they will be no worse off than if the class action were never commenced. Another factor in mitigation is that these 191 represent approximately one-half of 1% of the 33,000 originally given notice.

Practical considerations virtually foreclose remedial action at this date. All of these class members had paid off their mortgage loans before 1977. Assuming, based on the experience of class counsel, that most had sold their houses and moved before 1977, probably only a small fraction could now be reached by mail. For those who could be located it is somewhat doubt-

**4**

ful that notice of a fait accompli would be effective, since at least one of the options contemplated by section (c)(2)–appearance through counsel–is no longer available. Sound judgment dictates that benefits due the remainder of the class should not be delayed for the sake of such a belated and likely fruitless endeavor. The motion to exclude will be granted with regard to this category only.

