Jack **WELLER**, et al., Plaintiffs,

v.

**HSBC FINANCE CORPORATION,**
et al., Defendants.

Civil Action No. 13-cv-00185-REB-MJW

United States District Court,
D. Colorado.

Signed May 18, 2016

George F. Hollowell, Jr., Hollowell Law Firm, Greenville, MS, Peter A. Muhic, Edward W. Ciolko, Shannon O'Neill Braden, Tyler Stephen Graden, Kessler Topaz Meltzer & Check, LLP, Radnor, PA, Shanon Jude Carson, Berger & Montague, P.C., Philadelphia, PA, for Plaintiffs.

Benjamin Gary Diehl, Catherine Huang, Julia B. Strickland, Stroock, Stroock & Lavan, LLP, Wesley Michael Griffith, Jenner & Block, LLP, Los Angeles, CA, Holly R. Shilliday, McCarthy & Holthus, LLP, Centennial, CO; James D. Kilroy, Snell &

Wilmer, LLP, Virginia L. Olmstead, Davita Healthcare Partners Inc., Terence M. Ridley Wheeler Trigg O'Donnell, LLP, Denver, CO, Franklin George Burt, Brian Patrick Perryman, William Glenn Merten, Carlton Fields Jorden Burt, P.A., Washington, DC, Julianna Thomas McCabe, Carlton Fields Jorden Burt, P.A., Miami, FL, for Defendants.

## ORDER

Blackburn, United States District Judge

█ The matter before me is defendant **American Security Insurance Company's Motion To Enforce Final Order and Judgment and for Permanent Injunction and Supporting Memorandum of Law** [# 174],[1] filed February 25, 2016, in which defendants HSBC Finance Corporation and HSBC Mortgage Service, Inc. join ( [# 175], filed February 26, 2016). I have continuing jurisdiction over this matter pursuant to the All Writs Act, 28 U.S.C. § 1651,[2] the express terms of my **Order Granting Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Certification of Settlement Class, Approval of Plan of Allocation and Memorandum in Support Thereof** ¶ 4 at 3 [# 171], filed October 19, 2015 [hereinafter, "Final Order"], and the ancillary jurisdiction of the court, exercising its inherent powers, to enforce its judgments, *see Peacock v. Thomas*, 516 U.S. 349, 356, 116 S.Ct. 862, 868, 133 L.Ed.2d 817 (1996); *Metzger v. UNUM Life Insurance Co. of America*, 151 Fed.Appx. 648, 651 (10th Cir.2005). I grant the motion substantively, but deny defendants' request for attorney fees and costs associated with the motion.

As directed by the Final Order (*see* Final Order ¶ 2 at 3), final judgment with prejudice was entered against the named plaintiffs and all members of the Settlement Class on October 20, 2015. The Final Order contemplates "[t]hat promptly after the Effective Date,[3] Settlement Class members shall dismiss with prejudice all claims, actions, or proceedings that have been brought by any Settlement Class member in any other jurisdiction and that have been released pursuant to the Settlement and this Order." (*See id.* ¶ 17 at 13.) At that time, a lawsuit was pending in the United States District Court for the Northern District of Mississippi challeng-

---

1. "[# 174]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

2. The All Writs Act

   authorizes a federal court to issue such commands ... as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained. This power is not limited to parties in the original action, ... but rather extends, under appropriate circumstances, to persons who ... are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice.

*Hillman v. Webley*, 115 F.3d 1461, 1468 (10th Cir.1997) (quoting *United States v. New York Telephone Co.*, 434 U.S. 159, 172,174, 98 S.Ct. 364, 372, 373, 54 L.Ed.2d 376 (1977)) (internal quotation marks omitted). While not itself an independent basis of jurisdiction, the All Writs Act supports the court's "ability to facilitate [a] settlement by enjoining related suits of absent class members." *White v. National Football League*, 41 F.3d 402, 409 (8th Cir. 1994) *abrogated on other grounds by Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

3. The "Effective Date" was defined as "fifteen (15) days following the last of the following dates: (a) the entry of this Order; and (b) the final disposition of any related appeals, and in the case of no appeal or review being filed, expiration of the applicable appellate period." (Order ¶ 14(a)(v) at 7.) That date was December 2, 2015. (*See* Def. Motion at 6 n.3.)

ing the same lender-placed (alternatively known as force-placed) flood insurance practices as were the subject of this action. The plaintiff in that case, Lakisha Rochelle Griffin, has refused to dismiss her claims, prompting the instant motion.[4]

A settlement agreement is a contract, and thus questions of its construction and scope are governed by principles of contract law. *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir.2000); *Anthony v. United States*, 987 F.2d 670, 673 (10th Cir.1993). In connection with such a contract, parties to a class action may release, on behalf of the class, both "claims not presented and even those which could not have been presented as long as the released conduct arises out of the identical factual predicate as the settled conduct." *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2nd Cir.2005) (citation and internal quotation marks omitted).

There can be no serious question but that Ms. Griffin is a member of the Settlement Class subject to the Final Order. The gravamen of much of Ms. Grif-

fin's lawsuit is her allegation that HSBC, through American Security Insurance Company, wrongfully force-placed flood insurance on her property in 2008 and 2009, and perhaps thereafter as well. (Def. Motion App., Exh. A-1 ¶¶ 48-49 at 17.) That allegation places Ms. Griffin squarely within the ambit of the Settlement Class, which was defined to include "all borrowers in the United States who, between January 1, 2007, and April 20, 2015 (the 'Class Period'), were charged by the HSBC defendants and/or their respective subsidiaries and affiliates as insureds or additional insureds for a lender-placed flood insurance policy." (Final Order ¶ 7 at 4.)[5]

Ms. Griffin's reliance for the contrary position on the Fifth Circuit's unpublished, per curiam decision in *In re Chinese–Manufactured Drywall Products Liability Litigation*, 627 Fed.Appx. 319 (5th Cir.2015), is thoroughly unpersuasive. That case is plainly distinguishable on its facts.[6] Moreover, to the extent the case stands more generally for the proposition that "[i]t spurns simple reasoning to require individ-

---

4. Defendants' motion is not directed to other claims asserted in the Mississippi action which do not challenge the practice of force placing flood insurance. Thus, Ms. Griffin's "supplemental authority" suggesting that the Mississippi court has allowed claims related to the origination of her loan to proceed is inapposite. (*See* [# 185], filed April 22, 2016.) That her lawsuit commingles these claims with Released Claims does not prevent this court from enforcing the settlement as to the Released Claims.

Nevertheless, although defendants describe the claims they believe to be properly subject to the court's injunction in their response to Ms. Griffin's submission of supplemental authority [# 191], filed May 6, 2016), neither party has presented the court with a copy of the operative complaint in Ms. Griffin's lawsuit. The court thus is in no position to delineate specifically which of Ms. Griffin's claims or allegations come within the ambit of the settlement agreement. The court therefore will enter a general order and trust that the

Mississippi court—which is more familiar with the allegations of Ms. Griffin's operative complaint—can ably determine which of Ms. Griffin's claims fall outside the scope of the Released Claims and this Order.

5. The definition expressly excluded certain categories of individuals from the scope of the Settlement Class, none of which are claimed to be relevant here. (*See* Final Order ¶ 7(a)-(d) at 4-5.)

6. The settlement class in *In re Chinese–Manufactured Drywall* consisted of persons "hav[ing] a significant connection to the 'Affected Property.'" 627 Fed.Appx. at 322. The lawsuit sought to be enjoined was brought by the owner of a condominium unit who claimed the market value of his property—which did not contain any of the allegedly defective drywall—nevertheless was diminished by the stigma of being associated with the adjacent building, which did contain the drywall. *Id.* at 320–21.

uals to opt out of a settlement agreement under which they were never entitled to compensation," *id.* at 322–23, the fact is that Ms. Griffin was entitled to and was offered compensation from the settlement in this case as a putative member of the Settlement Class.

■ Ms. Griffin's next argument—that the Released Claims are not implicated by her lawsuit—is no more convincing. Her attempt to distinguish the factual allegations of her complaint from those of the underlying complaint in this case misses the mark entirely, since the preclusive effect *vel non* of the Settlement Agreement is governed by reference to the terms of the agreement itself, not by the claims asserted in the complaint. *See Norfolk Southern Corp. v. Chevron, U.S.A., Inc.,* 371 F.3d 1285, 1289 (11th Cir.2004) (noting this important distinction between res judicata effect of previously litigated case and res judicata effect of settlement agreement).

As to that relevant inquiry, the scope of the "Released Claims" set forth in the Settlement Agreement is exceptionally broad, and provides, in relevant part:

> [A]ll plaintiffs and each Settlement Class member shall, by operation of this Order, be deemed to have fully, conclusively, irrevocably, forever and finally released, relinquished and discharged the Released Parties from any and all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, promises, damages, penalties, attorneys' fees and costs, liens, judgments and demands of any kind whatsoever that each Settlement Class member may have on or before the Effective Date or may have had in the past, whether in arbitration, administrative or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state or local law, statute, ordinance, regulations, contract, common law or any other source, that relate, concern, arise from, or pertain in any way to the claims and allegations set forth, or which based upon the claims or allegations that could have been set forth, in the *Weller* and/or *Hoover* Actions involving any Released Party's conduct, policies or practices concerning LPFI Policies placed or charged by any of the Released Parties during the Class Period.

(Final Order ¶ 14(b) at 8–9.) Such claims include, *inter alia,* "all claims related to any Released Party's placement of and charges for or related to LPFI Policies during the Class Period."[7] Given that

---

7. Evidencing the expansiveness of the release, and by way of further example, but not limitation, the Released Claims also include:

> any reinsurance agreements involving any Released Party concerning LPFI Policies; the relationship, whether contractual or otherwise, between the HSBC defendants and/or their respective subsidiaries and Affiliates and the Assurant defendants and/or their respective subsidiaries and Affiliates regarding LPFI, including, but not limited to, the procuring, underwriting, placement, administering, tracking or costs of LPFI Policies; the amount, duration and alleged excessiveness of any LPFI Policies placed or charged by any Released Party; the payment or receipt of commissions, expense reimbursements, alleged "kickbacks," or any other compensation under any LPFI Policies placed or charged by any Released Party; any alleged "tying" arrangement involving any Released Party and LPFI; any alleged breach of fiduciary duty by any Released Party concerning LPFI Policies; any alleged tortious interference by any Released Party with mortgage contracts serviced by any other Released Party regarding LPFI; the disclosure or non-dis-

expansive definition, the minor factual distinctions between Ms. Griffin's circumstances, including the allegation that defendants force placed flood insurance despite receiving proof that she had acquired insurance independently, do not put her claims outside the scope of the Released Claims.

■ Finally, Ms. Griffin claims she did not receive adequate notice of the proposed settlement in this case because notice was mailed to the address of her insured property, which had been damaged in a 2013 fire. She maintains that since defendants processed her claim for the fire loss, they should have known she was not living at that address and should have made further efforts to ensure that she received actual notice.[8]

■■ Setting aside the fact that this argument is supported by no actual evidence (in the form of an affidavit, declaration, or otherwise) to substantiate Ms. Griffin's claim of non-receipt, it is legally unsound. Notice meets the requirements of due process where it is " 'reasonably calcu-lated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir.2005) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). What is required is that the class as a whole receive "the best notice practicable under the circumstances." *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1110–11 (10th Cir.2001); *aff'd*, 354 F.3d 1246 (10th Cir.2004).[9] The failure of any individual class member to receive actual notice does not render notice constitutionally inadequate. *DeJulius*, 429 F.3d at 944. *See also Burns v. Copley Pharmaceutical, Inc.*, 1997 WL 767763 *2 (10th Cir. Dec. 11, 1997); *Silber v. Mahon*, 18 F.3d 1449, 1453–54 (9th Cir.1994); *US West, Inc. v. Business Discount Plan, Inc.*, 196 F.R.D. 576, 582 (D.Colo.2000); *In re Prudential Securities Inc. Ltd. Partnerships Litigation*, 164 F.R.D. 362, 368 (S.D.N.Y.), *aff'd*, 107 F.3d 3 (2nd Cir.1996); *In re VMS*

---

closure of any payment, expenses, fees, charges or feature pertaining to or under any LPFI Policies placed or charged by any Released Party; the receipt or non-disclosure of any benefit under any LPFI Policies placed or charged by any Released Party; the content, manner or accuracy of any communications regarding the placement of any LPFI Policy by any Released Party; and to the regulatory approval or non-approval of any LPFI Policy, or the premium thereon, placed or charged by any Released Party.
(Final Order ¶ 14(b) at 9–10.)

**8.** Ms. Griffin does not confirm her appropriate mailing address, but suggests that defendants were obligated to serve notice on her attorney. This is not the law. *See Supermarkets General Corp. Ration v. Grinnell Corp.*, 490 F.2d 1183, 1185–86 (2nd Cir.1974); *In re The Prudential Insurance Co. of America Sales Practice Litigation*, 177 F.R.D. 216, 240 (D.N.J.1997).

Nor does it appear to this court that Ms. Griffin could substantiate her claim that notice was mailed to an incorrect address in any event. The Settlement Administrator searched the National Change of Address System but found no change of address for Ms. Griffin had been submitted to the U.S. Postal Service within the previous four years. (Def. Motion App., Exh. 2 ¶ 5 at 2.) The Notice thus was mailed to Ms. Griffin at her last known address as shown on her policy: 1715 McClain Street, Greenville, Mississippi 38701 (*see id.* ¶¶ 4, 6 at 2), which is plaintiff's mother's address (*see* Def. Reply App., Exh. 2 at 5 (listing his address for Ms. Frankie Griffin). Ms. Griffin, meanwhile, continued to list the allegedly uninhabitable, fire-damaged property—located at 1725 McClain Street, Greenville, Mississippi 38701—as her own primary address. (*See id.*, Exh. 2 at 5.)

**9.** The Class Notice program approved by this court was expressly found to meet that standard. (Preliminary Order ¶ 7(a) at 4.)

*Limited Partnership Securities Litigation*, 1995 WL 355722 at *2 (N.D.Ill. June 12, 1995); *Trist v. First Federal Savings & Loan Association of Chester*, 89 F.R.D. 1, 2 (E.D.Pa.1980).

Accordingly, I find and conclude that Ms. Griffin is a member of the Settlement Class who, despite constitutionally adequate notice of the proposed settlement, failed to opt out in the time allowed. She therefore is bound by the Final Order and the judgment entered in this matter. Thus, to the extent her claims in the Mississippi lawsuit come within the ambit of the Released Claims, she must be enjoined from further prosecuting those claims.

Although defendants also request attorney fees and costs incurred in filing this motion, they have provided no legal authority, nor any factual substantiation, to support such an award. The motion thus is denied insofar as it seeks such relief.

**THEREFORE, IT IS ORDERED** as follows:

1. That defendant **American Security Insurance Company's Motion To Enforce Final Order and Judgment and for Permanent Injunction and Supporting Memorandum of Law** [# 174], filed February 25, 2016, is granted in part and denied in part;

2. That the motion is granted to the extent it seeks to enjoin Lakisha Rochelle Griffin from prosecuting further any of the Released Claims in the case styled *Griffin v. HSBC Mortgage Services, Inc. et al.*, Civil Action No. 4:14–cv–00132 (N.D.Miss.), and Ms. Griffin is so enjoined; and

3. That the motion is denied insofar as it seeks attorney fees and costs incurred in connection with the filing thereof.