SANSEA, INC., Appellee,

v.

MAHONING COUNTY BOARD OF ELECTIONS et al., Appellants.

[Cite as *Sansea, Inc. v. Mahoning Cty. Bd. of Elections* (1996), 113 Ohio App.3d 351.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 95 C.A. 261.

Decided Aug. 8, 1996.

*Stephen Garea,* for appellee.

*James A. Philomena,* Mahoning County Prosecuting Attorney, and *Diane Politi,* Assistant Prosecuting Attorney, for appellants.

---

O'NEILL, Presiding Judge.

On July 29, 1993, Vincent Tondy requested a list of permit holders within the fourth ward of the city of Campbell, Ohio, from the Ohio Department of Liquor Control. The sole permit holder within that ward was Sansea, Inc., with an address furnished by the liquor department of 360 McCartney Road, Campbell, Ohio.

Within five days of receiving this information, Tondy mailed a notice of his intent to file petitions for a local option. This notice was sent by certified mail to Sansea, Inc., at the McCartney Road address. By a return, the postal service informed Tondy that the certified mail had been unclaimed and, further, that notices of it had been left at the address on McCartney Road.

On August 17, 1993, Tondy then filed his petition for a local option election with the Mahoning County Board of Elections ("board"), together with his affidavit certifying that all permit holders within Ward Four had been notified pursuant to statute. On August 17, 1993, the board notified the permit holder, among others, of a notice of election to be held on the local option question. This notice by the board was mailed to the permit holder at the address furnished by the Department of Liquor Control by certified mail. The mail was returned by the United States Postal Service to the board on September 3, 1993 with a notice that the certified mail had been unclaimed although a notice had been left at the address of the permit holder on August 18, 1993 and again on August 23, 1993.

On November 2, 1993, the local option election was held with the unofficial results being in favor of abolishing the sale of alcoholic beverages and beer in the fourth ward of the city of Campbell, Ohio.

On November 24, 1993, Sansea filed a complaint for injunctive relief, requesting a temporary restraining order and a permanent injunction enjoining the board from certifying the results of the local option election and to nullify the election as being in violation of law. The trial court granted the temporary restraining order on November 24, 1993 and scheduled a hearing on the preliminary injunction for December 8, 1993. The parties agreed to continue the temporary restraining order until December 17, 1993, at which time an evidentiary hearing was conducted in the trial court. At the conclusion of the hearing, the trial court ordered briefs submitted in lieu of oral argument and, on January 3, 1994, granted the appellant's motion to supplement the record with new evidence,

which was an affidavit from Juanita Tondy and the original unclaimed certified mail envelope.

On January 28, 1994, the trial judge signed and filed a judgment entry granting the preliminary injunction, specifically finding that the notices required by R.C. 4301.33 are actual notices and that when both certified mail notices were returned, notice was not complete. The board filed an appeal to this court, case No. 94 C.A. 33, which was dismissed *sua sponte* because the granting of the preliminary injunction was not a final appealable order.

On November 28, 1995, the trial court extended the preliminary injunction to a permanent injunction and a timely notice of appeal was filed directed to that judgment.

■ We should make it clear at the outset that there are no constitutional rights involved in this case. The liquor industry in Ohio, as well as every state in the union, exists only at the will and pleasure of the people of the state of Ohio, either by popular vote or through the legislative body and then only according to the laws prescribed by the people or the legislative body and the rules and regulations of any administrative body to which authority has lawfully been delegated. *Stouffer Corp. v. Bd. of Liquor Control* (1956), 165 Ohio St. 96, 59 O.O. 100, 133 N.E.2d 325. In *State ex rel. Zugravu v. O'Brien* (1935), 130 Ohio St. 23, 3 O.O. 74, 196 N.E. 664, the Supreme Court stated:

"Permits to carry on the liquor business which are issued under the provisions of the Liquor Control Act are mere licenses, revocable as therein provided, and create no contract or property right." *Id.* at paragraph two of the syllabus.

In its opinion, the *Zugravu* court stated:

" * * * The holdings are uniformly to the effect that such a license does not create a property right within the constitutional meaning of that term, nor even a contract, and that it constitutes a mere permission to engage in the liquor business, which may be revoked in the prescribed legislative manner." *Id.* at 27, 3 O.O. at 75, 196 N.E. at 666.

■ It follows that permits for the dispensing of alcoholic beverage are creatures of statute and that a permit holder accepting a permit accepts it subject to all conditions imposed by legislation and by appropriate administrative rules. R.C. 4301.33 provides as follows:

"The board of elections shall provide to a petitioner circulating a petition for an election for the submission of one or more of the questions specified in divisions (A) to (C) of section 4301.35 or section 4301.351 of the Revised Code, at the time he takes out the petition, the names of the streets and, if appropriate, the address numbers of residences and business establishments within the precinct or resi-

dence district in which the election is sought, and a form prescribed by the secretary of state for notifying affected permit holders of the circulation of a petition for an election for the submission of one or more of the questions specified in divisions (A) to (C) of section 4301.35 or section 4301.351 of the Revised Code. The petitioner shall, not less than forty-five days before the petition-filing deadline for the election, as provided in this section, file with the department of liquor control the information regarding names of streets and, if appropriate, address numbers of residences and business establishments provided to him by the board of elections, and specify to the department the precinct or residence district that is concerned and the filing deadline. The department shall, within a reasonable period of time and not later than fifteen days before the filing deadline, supply the petitioner with a list of the names and addresses of permit holders who would be affected by the election. The list shall contain a heading with the following words: 'Liquor permit holders who would be affected by the question(s) set forth on petition for a local option election.'

"Within five days after a petitioner has received from the department the list of liquor permit holders who would be affected by the question or questions set forth on a petition for local option election, he shall, using the form provided to him by the board of elections, notify by certified mail each permit holder whose name appears on that list. The form for notifying affected permit holders shall require the petitioner to state his name and street address and shall contain a statement that a petition is being circulated for an election for the submission of the question or questions specified in divisions (A) to (C) of section 4301.35 or section 4301.351 of the Revised Code. The form shall require the petitioner to state the question or questions to be submitted as they appear on the petition.

"The petitioner shall attach a copy of the list provided to him by the department to each petition paper. A part petition paper circulated at any time without the list of affected permit holders attached to it is invalid.

"At the time he files the petition with the board of elections, the petitioner shall provide to the board the list supplied to him by the department and an affidavit certifying that he notified all affected permit holders on the list in the manner and within the time required in this section and that, at the time each signer of the petition affixed his signature to the petition, the petition paper contained a copy of the list of affected permit holders.

"Within five days after receiving a petition calling for an election for the submission of one or more of the questions specified in divisions (A) to (C) of section 4301.35 or section 4301.351 of the Revised Code, the board shall give notice by certified mail that it has received the petition to all liquor permit holders whose names appear on the list of affected permit holders filed by the petitioner as furnished to him by the department. Failure of the petitioner to

supply the affidavit required by this section and a complete and accurate list of liquor permit holders as furnished to him by the department of liquor control invalidates the entire petition. The board of elections shall provide to a permit holder who would be affected by a proposed local option election, on the permit holder's request, the names of the streets, and, if appropriate, the address numbers of residences and business establishments within the precinct or residence district in which the election is sought. The board may charge a reasonable fee for this information when provided to the petitioner and the permit holder.

"Upon the presentation of a petition, not later than four p.m. of the seventy-fifth day before the day of a general or primary election, to the board of elections of the county where the precinct or residence district is located, designating whether it is a petition for an election for the submission of one or more of the questions specified in section 4301.35 of the Revised Code, or a petition for the submission of one or more of the questions specified in section 4301.351 of the Revised Code, designating the particular question or questions specified in section 4301.35 or 4301.351 of the Revised Code that are to be submitted, and signed by the qualified electors of the precinct or residence district concerned, equal in number to thirty-five per cent of the total number of votes cast in the precinct concerned for the office of governor at the preceding general election for that office, in the case of an election within a single precinct, or equal in number to fifty-five per cent of the total number of votes cast in the residence district concerned for the office of governor at the preceding general election for that office, in the case of an election within a residence district, the board shall submit the question or questions specified in the petition to the electors of the precinct or residence district concerned, on the day of the next general or primary election, whichever occurs first and shall proceed as follows:

"(A) Such board shall, not later than the sixty-sixth day before the day of the election for which the question or questions on the petition would qualify for submission to the electors of the precinct or residence district, examine and determine the sufficiency of the signatures and review, examine, and determine the validity of the petition and, in case of overlapping residence district petitions or overlapping precinct and residence district petitions presented within that period, determine which of the petitions shall govern the further proceedings of the board. In the case where the board determines that two or more overlapping petitions are valid, the earlier filed petition shall govern. The board shall certify the sufficiency and validity of any petition determined to be valid. The board shall determine the validity of the petition as of the time of certification as described in this division.

"(B) If a petition is sufficient, and, in case of overlapping residence district petitions or overlapping precinct and residence district petitions, after the board has determined the governing petition, the board to which the petition has been presented shall order the holding of a special election in the precinct or residence district for the submission of whichever of the questions specified in section 4301.35 or 4301.351 of the Revised Code are designated in the petition, on the day of the next general or primary election, whichever occurs first.

"All petitions filed with a board of elections under this section shall be open to public inspection under rules adopted by the board.

"Protest against local option petitions may be filed by any elector eligible to vote on the question or questions described in the petitions or by a permit holder in the precinct or residence district as described in the petitions, not later than four p.m. of the sixty-fourth day before the day of the general or primary election for which the petition qualified. The protest shall be in writing and shall be filed with the election officials with whom the petition was filed. Upon filing of the protest, the election officials with whom it is filed shall promptly fix the time for hearing it, and shall mail notice of the filing of the protest and the time and place for hearing it to the person who filed the petition and to the person who filed the protest. At the time and place fixed, the election officials shall hear the protest and determine the validity of the petition."

■ Both Tondy and the board complied with the statute to the extent that each of them placed notice of the petition and of the pending local option election in the mail as certified mail to the address furnished by the Department of Liquor Control. In each instance, the United States Postal Service notified Tondy and the board that it had been unsuccessful in its attempt to deliver the certified mail, though notices of the mail had been left at the address of Sansea, Inc. Unclaimed certified mail has been defined by the Court of Appeals for Franklin County in *Mfrs. Hanover Trust Co. v. Gene R. Brockmeyer & Co.* (1982), 4 Ohio App.3d 125, 127, 4 OBR 217, 218, 446 N.E.2d 829, 831, as follows:

" 'Unclaimed' does not necessarily indicate a refusal to accept delivery. Rather, it implies an unawareness of attempted delivery, or negligence in acting promptly to claim the mail."

In the case at hand, the postal authorities had left two notices of the presence of the certified mail sent by Tondy and by the board. Pursuant to statute, all of these notices were left at the address furnished by the Department of Liquor Control. It is a justifiable presumption that every holder of a liquor permit in the state of Ohio is well aware of the state statutes which control that permit. Every permit holder must be aware that there is a possibility of a local option election which could affect the permit involved. Every permit holder must be

presumed to know that notices of this potential local option would be furnished to the address of the permit by certified mail. The fact that the permit holder fails to claim such certified mail does not amount to a lack of notice. Tondy did his part required by statute and the board did its part required by statute.

There was complete compliance on the part of both parties with the requirements of the statute.

Most certainly, the requirement of the statute, that there be notice by certified mail upon the permit holder, is reasonably calculated to reach the permit holder. Although we are not here concerned with constitutional due process, the United States Supreme Court has addressed the issue of process in *Mullane v. Cent. Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865, wherein that court stated:

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. at 657, 94 L.Ed. at 873.

The Ohio Supreme Court has interpreted "reasonably calculated" in the case of *Akron–Canton Regional Airport Auth. v. Swinehart* (1980), 62 Ohio St.2d 403, 406, 16 O.O.3d 436, 438, 406 N.E.2d 811, 814:

"So long as service is 'reasonably calculated' to reach interested parties, then the service is constitutionally sound. Accordingly, it is not necessary that service be attempted through the most likely means of success. * * *"

Disposition of this first assignment of error renders the remaining assignments of error of no consequence. Relief is granted by this court in sustaining the first assignment of error. This is controlling and dispositive of the core issue presented in this case. Therefore, we need not address the issues of exhaustion of administrative remedies and laches.

The judgment of the trial court is reversed and judgment is entered in behalf of defendants-appellants.

*Judgment reversed.*

GENE DONOFRIO and COX, JJ., concur.