# MULLANE, SPECIAL GUARDIAN, v. CENTRAL HANOVER BANK & TRUST CO., TRUSTEE, ET AL.

No. 378.   Argued February 8, 1950.—Decided April 24, 1950.

*Kenneth J. Mullane* argued the cause and filed a brief for appellant.

*Albert B. Maginnes* argued the cause for the Central Hanover Bank & Trust Co., appellee. With him on the brief was *J. Quincy Hunsicker, 3rd.*

*James N. Vaughan* submitted on brief for Vaughan, appellee.

*Peter Keber* and *C. Alexander Capron* filed a brief for the New York State Bankers Association, as *amicus curiae,* urging affirmance.

MR. JUSTICE JACKSON delivered the opinion of the Court.

This controversy questions the constitutional sufficiency of notice to beneficiaries on judicial settlement of accounts by the trustee of a common trust fund established under the New York Banking Law. The New York Court of Appeals considered and overruled objections that the statutory notice contravenes requirements of the Fourteenth Amendment and that by allowance of the account beneficiaries were deprived of property without due process of law. 299 N. Y. 697, 87 N. E. 2d 73. The case is here on appeal under 28 U. S. C. § 1257.

Common trust fund legislation is addressed to a problem appropriate for state action. Mounting overheads have made administration of small trusts undesirable to corporate trustees. In order that donors and testators of moderately sized trusts may not be denied the service of corporate fiduciaries, the District of Columbia and some

thirty states other than New York have permitted pooling small trust estates into one fund for investment administration.* The income, capital gains, losses and expenses of the collective trust are shared by the constituent trusts in proportion to their contribution. By this plan, diversification of risk and economy of management can be extended to those whose capital standing alone would not obtain such advantage.

Statutory authorization for the establishment of such common trust funds is provided in the New York Banking Law, § 100–c (c. 687, L. 1937, as amended by c. 602, L. 1943 and c. 158, L. 1944). Under this Act a trust company may, with approval of the State Banking Board, establish a common fund and, within prescribed limits,

---

*Ala. Code Ann., 1940, Cum. Supp. 1947, tit. 58, §§ 88 to 103, as amended, Laws 1949, Act 262; Ariz. Code Ann., 1939, Cum. Supp. 1949, §§ 51–1101 to 51–1104; Ark. Stat. Ann. 1947, §§ 58–110 to 58–112; Cal. Bank. Code Ann., Deering, 1949, § 1564; Colo. Stat. Ann., 1935, Cum. Supp. 1947, c. 18, §§ 173 to 178; Conn. Gen. Stat. 1949 Rev., § 5805; Del. Rev. Code, 1935, § 4401, as amended, Laws, 1943, c. 171, Laws 1947, c. 268; (D. C.) 63 Stat. 938; Fla. Stat., 1941, §§ 655.29 to 655.34; Ga. Code Ann., 1937, Cum. Supp. 1947, §§ 109–601 to 109–622; Idaho Code Ann., 1949, Cum. Supp. 1949, §§ 68–701 to 68–703; Ill. Rev. Stat., 1949, c. 16½, §§ 57 to 63; Ind. Stat. Ann., Burns, 1950, §§ 18–2009 to 18–2014; Ky. Rev. Stat., 1948, § 287.230; La. Gen. Stat. Ann., 1939, § 9850.64; Md. Ann. Code Gen. Laws, 1939, Cum. Supp. 1947, art. 11, § 62A; Mass. Ann. Laws, 1933, Cum. Supp. 1949, c. 203A; Mich. Stat. Ann., 1943, §§ 23.1141 to 23.1153; Minn. Stat., 1945, § 48.84, as amended, Laws 1947, c. 234; N. J. Stat. Ann., 1939, Cum. Supp. 1949, §§ 17:9A–36 to 17:9A–46; N. C. Gen. Stat., 1943, §§ 36–47 to 36–52; Ohio Gen. Code Ann. (Page, 1946) §§ 715 to 720, 722; Okla. Stat., 1941, Cum. Supp. 1949, tit. 60, § 162; Pa. Stat. Ann., 1939, Cum. Supp. 1949, tit. 7, §§ 819–1109 to 819–1109d; So. Dak. Laws 1941, c. 20; Tex. Rev. Civ. Stat. Ann., 1939, Cum. Supp. 1949, art. 7425b–48; Vt. Stat., 1947 Rev., § 8873; Va. Code Ann., 1950, §§ 6–569 to 6–576; Wash. Rev. Stat. Ann., Supp. 1943, §§ 3388 to 3388–6; W. Va. Code Ann., 1949, § 4219(1) *et seq.;* Wis. Stat., 1947, § 223.055.

invest therein the assets of an unlimited number of estates, trusts or other funds of which it is trustee. Each participating trust shares ratably in the common fund, but exclusive management and control is in the trust company as trustee, and neither a fiduciary nor any beneficiary of a participating trust is deemed to have ownership in any particular asset or investment of this common fund. The trust company must keep fund assets separate from its own, and in its fiduciary capacity may not deal with itself or any affiliate. Provisions are made for accountings twelve to fifteen months after the establishment of a fund and triennially thereafter. The decree in each such judicial settlement of accounts is made binding and conclusive as to any matter set forth in the account upon everyone having any interest in the common fund or in any participating estate, trust or fund.

In January, 1946, Central Hanover Bank and Trust Company established a common trust fund in accordance with these provisions, and in March, 1947, it petitioned the Surrogate's Court for settlement of its first account as common trustee. During the accounting period a total of 113 trusts, approximately half *inter vivos* and half testamentary, participated in the common trust fund, the gross capital of which was nearly three million dollars. The record does not show the number or residence of the beneficiaries, but they were many and it is clear that some of them were not residents of the State of New York.

The only notice given beneficiaries of this specific application was by publication in a local newspaper in strict compliance with the minimum requirements of N. Y. Banking Law § 100–c (12): "After filing such petition [for judicial settlement of its account] the petitioner shall cause to be issued by the court in which the petition is filed and shall publish not less than once in each week

for four successive weeks in a newspaper to be designated by the court a notice or citation addressed generally without naming them to all parties interested in such common trust fund and in such estates, trusts or funds mentioned in the petition, all of which may be described in the notice or citation only in the manner set forth in said petition and without setting forth the residence of any such decedent or donor of any such estate, trust or fund." Thus the only notice required, and the only one given, was by newspaper publication setting forth merely the name and address of the trust company, the name and the date of establishment of the common trust fund, and a list of all participating estates, trusts or funds.

At the time the first investment in the common fund was made on behalf of each participating estate, however, the trust company, pursuant to the requirements of § 100–c (9), had notified by mail each person of full age and sound mind whose name and address were then known to it and who was "entitled to share in the income therefrom . . . [or] . . . who would be entitled to share in the principal if the event upon which such estate, trust or fund will become distributable should have occurred at the time of sending such notice." Included in the notice was a copy of those provisions of the Act relating to the sending of the notice itself and to the judicial settlement of common trust fund accounts.

Upon the filing of the petition for the settlement of accounts, appellant was, by order of the court pursuant to § 100–c (12), appointed special guardian and attorney for all persons known or unknown not otherwise appearing who had or might thereafter have any interest in the income of the common trust fund; and appellee Vaughan was appointed to represent those similarly interested in the principal. There were no other appearances on behalf of any one interested in either interest or principal.

Appellant appeared specially, objecting that notice and the statutory provisions for notice to beneficiaries were inadequate to afford due process under the Fourteenth Amendment, and therefore that the court was without jurisdiction to render a final and binding decree. Appellant's objections were entertained and overruled, the Surrogate holding that the notice required and given was sufficient. 75 N. Y. S. 2d 397. A final decree accepting the accounts has been entered, affirmed by the Appellate Division of the Supreme Court, 275 App. Div. 769, 88 N. Y. S. 2d 907, and by the Court of Appeals of the State of New York. 299 N. Y. 697, 87 N. E. 2d 73.

The effect of this decree, as held below, is to settle "all questions respecting the management of the common fund." We understand that every right which beneficiaries would otherwise have against the trust company, either as trustee of the common fund or as trustee of any individual trust, for improper management of the common trust fund during the period covered by the accounting is sealed and wholly terminated by the decree. See *Matter of Hoaglund,* 194 Misc. 803, 811–812, 74 N. Y. S. 2d 156, 164, aff'd 272 App. Div. 1040, 74 N. Y. S. 2d 911, aff'd 297 N. Y. 920, 79 N. E. 2d 746; *Matter of Bank of New York,* 189 Misc. 459, 470, 67 N. Y. S. 2d 444, 453; *Matter of Security Trust Co. of Rochester, id.* 748, 760, 70 N. Y. S. 2d 260, 271; *Matter of Continental Bank & Trust Co., id.* 795, 797, 67 N. Y. S. 2d 806, 807–808.

We are met at the outset with a challenge to the power of the State—the right of its courts to adjudicate at all as against those beneficiaries who reside without the State of New York. It is contended that the proceeding is one *in personam* in that the decree affects neither title to nor possession of any *res,* but adjudges only personal rights of the beneficiaries to surcharge their trustee for negligence or breach of trust. Accordingly, it is said, under the strict doctrine of *Pennoyer* v. *Neff,* 95 U. S. 714, the Surrogate

is without jurisdiction as to nonresidents upon whom personal service of process was not made.

Distinctions between actions *in rem* and those *in personam* are ancient and originally expressed in procedural terms what seems really to have been a distinction in the substantive law of property under a system quite unlike our own. Buckland and McNair, *Roman Law and Common Law,* 66; Burdick, *Principles of Roman Law and Their Relation to Modern Law,* 298. The legal recognition and rise in economic importance of incorporeal or intangible forms of property have upset the ancient simplicity of property law and the clarity of its distinctions, while new forms of proceedings have confused the old procedural classification. American courts have sometimes classed certain actions as *in rem* because personal service of process was not required, and at other times have held personal service of process not required because the action was *in rem.* See cases collected in *Freeman on Judgments,* §§ 1517 *et seq.* (5th ed.).

Judicial proceedings to settle fiduciary accounts have been sometimes termed *in rem,* or more indefinitely *quasi in rem,* or more vaguely still, "in the nature of a proceeding *in rem.*" It is not readily apparent how the courts of New York did or would classify the present proceeding, which has some characteristics and is wanting in some features of proceedings both *in rem* and *in personam.* But in any event we think that the requirements of the Fourteenth Amendment to the Federal Constitution do not depend upon a classification for which the standards are so elusive and confused generally and which, being primarily for state courts to define, may and do vary from state to state. Without disparaging the usefulness of distinctions between actions *in rem* and those *in personam* in many branches of law, or on other issues, or the reasoning which underlies them, we do not rest the power of the State to resort to constructive service in this proceeding

upon how its courts or this Court may regard this historic antithesis. It is sufficient to observe that, whatever the technical definition of its chosen procedure, the interest of each state in providing means to close trusts that exist by the grace of its laws and are administered under the supervision of its courts is so insistent and rooted in custom as to establish beyond doubt the right of its courts to determine the interests of all claimants, resident or nonresident, provided its procedure accords full opportunity to appear and be heard.

Quite different from the question of a state's power to discharge trustees is that of the opportunity it must give beneficiaries to contest. Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.

In two ways this proceeding does or may deprive beneficiaries of property. It may cut off their rights to have the trustee answer for negligent or illegal impairments of their interests. Also, their interests are presumably subject to diminution in the proceeding by allowance of fees and expenses to one who, in their names but without their knowledge, may conduct a fruitless or uncompensatory contest. Certainly the proceeding is one in which they may be deprived of property rights and hence notice and hearing must measure up to the standards of due process.

Personal service of written notice within the jurisdiction is the classic form of notice always adequate in any type of proceeding. But the vital interest of the State in bringing any issues as to its fiduciaries to a final settlement can be served only if interests or claims of individuals who are outside of the State can somehow be determined. A construction of the Due Process Clause which

would place impossible or impractical obstacles in the way could not be justified.

Against this interest of the State we must balance the individual interest sought to be protected by the Fourteenth Amendment. This is defined by our holding that "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis* v. *Ordean,* 234 U. S. 385, 394. This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.

The Court has not committed itself to any formula achieving a balance between these interests in a particular proceeding or determining when constructive notice may be utilized or what test it must meet. Personal service has not in all circumstances been regarded as indispensable to the process due to residents, and it has more often been held unnecessary as to nonresidents. We disturb none of the established rules on these subjects. No decision constitutes a controlling or even a very illuminating precedent for the case before us. But a few general principles stand out in the books.

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken* v. *Meyer,* 311 U. S. 457; *Grannis* v. *Ordean,* 234 U. S. 385; *Priest* v. *Las Vegas,* 232 U. S. 604; *Roller* v. *Holly,* 176 U. S. 398. The notice must be of such nature as reasonably to convey the required information, *Grannis* v. *Ordean, supra,* and it must afford a reasonable time for those interested to make their appearance, *Roller* v. *Holly, supra,* and *cf. Goodrich* v. *Ferris,* 214 U. S. 71. But if with due regard for the practicalities and peculiarities of the case these conditions

are reasonably met, the constitutional requirements are satisfied. "The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals." *American Land Co.* v. *Zeiss,* 219 U. S. 47, 67; and see *Blinn* v. *Nelson,* 222 U. S. 1, 7.

But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, compare *Hess* v. *Pawloski,* 274 U. S. 352, with *Wuchter* v. *Pizzutti,* 276 U. S. 13, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

It would be idle to pretend that publication alone, as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts. It is not an accident that the greater number of cases reaching this Court on the question of adequacy of notice have been concerned with actions founded on process constructively served through local newspapers. Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when, as here, the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention. In weighing its sufficiency on the basis of equivalence with actual notice, we are unable to regard this as more than a feint.

Nor is publication here reinforced by steps likely to attract the parties' attention to the proceeding. It is true that publication traditionally has been acceptable as notification supplemental to other action which in itself may reasonably be expected to convey a warning. The ways of an owner with tangible property are such that he usually arranges means to learn of any direct attack upon his possessory or proprietary rights. Hence, libel of a ship, attachment of a chattel or entry upon real estate in the name of law may reasonably be expected to come promptly to the owner's attention. When the state within which the owner has located such property seizes it for some reason, publication or posting affords an additional measure of notification. A state may indulge the assumption that one who has left tangible property in the state either has abandoned it, in which case proceedings against it deprive him of nothing, *cf. Anderson National Bank* v. *Luckett,* 321 U. S. 233; *Security Savings Bank* v. *California,* 263 U. S. 282, or that he has left some caretaker under a duty to let him know that it is being jeopardized. *Ballard* v. *Hunter,* 204 U. S. 241; *Huling* v. *Kaw Valley R. Co.,* 130 U. S. 559. As phrased long ago by Chief Justice Marshall in *The Mary,* 9 Cranch 126, 144, "It is the part of common prudence for all those who have any interest in [a thing], to guard that interest by persons who are in a situation to protect it."

In the case before us there is, of course, no abandonment. On the other hand these beneficiaries do have a resident fiduciary as caretaker of their interest in this property. But it is their caretaker who in the accounting becomes their adversary. Their trustee is released from giving notice of jeopardy, and no one else is expected to do so. Not even the special guardian is required or apparently expected to communicate with his ward and client, and, of course, if such a duty were merely trans-

ferred from the trustee to the guardian, economy would not be served and more likely the cost would be increased.

This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights. *Cunnius* v. *Reading School District*, 198 U. S. 458; *Blinn* v. *Nelson*, 222 U. S. 1; and see *Jacob* v. *Roberts*, 223 U. S. 261.

Those beneficiaries represented by appellant whose interests or whereabouts could not with due diligence be ascertained come clearly within this category. As to them the statutory notice is sufficient. However great the odds that publication will never reach the eyes of such unknown parties, it is not in the typical case much more likely to fail than any of the choices open to legislators endeavoring to prescribe the best notice practicable.

Nor do we consider it unreasonable for the State to dispense with more certain notice to those beneficiaries whose interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge of the common trustee. Whatever searches might be required in another situation under ordinary standards of diligence, in view of the character of the proceedings and the nature of the interests here involved we think them unnecessary. We recognize the practical difficulties and costs that would be attendant on frequent investigations into the status of great numbers of beneficiaries, many of whose interests in the common fund are so remote as to be ephemeral; and we have no doubt that such impracticable and extended searches are not required in the

name of due process. The expense of keeping informed from day to day of substitutions among even current income beneficiaries and presumptive remaindermen, to say nothing of the far greater number of contingent beneficiaries, would impose a severe burden on the plan, and would likely dissipate its advantages. These are practical matters in which we should be reluctant to disturb the judgment of the state authorities.

Accordingly we overrule appellant's constitutional objections to published notice insofar as they are urged on behalf of any beneficiaries whose interests or addresses are unknown to the trustee.

As to known present beneficiaries of known place of residence, however, notice by publication stands on a different footing. Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties. Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency.

The trustee has on its books the names and addresses of the income beneficiaries represented by appellant, and we find no tenable ground for dispensing with a serious effort to inform them personally of the accounting, at least by ordinary mail to the record addresses. *Cf. Wuchter* v. *Pizzutti, supra.* Certainly sending them a copy of the statute months and perhaps years in advance does not answer this purpose. The trustee periodically remits their income to them, and we think that they might reasonably expect that with or apart from their remittances word might come to them personally that steps were being taken affecting their interests.

We need not weigh contentions that a requirement of personal service of citation on even the large number of known resident or nonresident beneficiaries would, by

reasons of delay if not of expense, seriously interfere with the proper administration of the fund. Of course personal service even without the jurisdiction of the issuing authority serves the end of actual and personal notice, whatever power of compulsion it might lack. However, no such service is required under the circumstances. This type of trust presupposes a large number of small interests. The individual interest does not stand alone but is identical with that of a class. The rights of each in the integrity of the fund and the fidelity of the trustee are shared by many other beneficiaries. Therefore notice reasonably certain to reach most of those interested in objecting is likely to safeguard the interests of all, since any objection sustained would inure to the benefit of all. We think that under such circumstances reasonable risks that notice might not actually reach every beneficiary are justifiable. "Now and then an extraordinary case may turn up, but constitutional law like other mortal contrivances has to take some chances, and in the great majority of instances no doubt justice will be done." *Blinn* v. *Nelson, supra,* 7.

The statutory notice to known beneficiaries is inadequate, not because in fact it fails to reach everyone, but because under the circumstances it is not reasonably calculated to reach those who could easily be informed by other means at hand. However it may have been in former times, the mails today are recognized as an efficient and inexpensive means of communication. Moreover, the fact that the trust company has been able to give mailed notice to known beneficiaries at the time the common trust fund was established is persuasive that postal notification at the time of accounting would not seriously burden the plan.

In some situations the law requires greater precautions in its proceedings than the business world accepts for its own purposes. In few, if any, will it be satisfied with

less.  Certainly it is instructive, in determining the rea-
sonableness of the impersonal broadcast notification here
used, to ask whether it would satisfy a prudent man of
business, counting his pennies but finding it in his interest
to convey information to many persons whose names and
addresses are in his files.  We are not satisfied that it
would.  Publication may theoretically be available for
all the world to see, but it is too much in our day to sup-
pose that each or any individual beneficiary does or could
examine all that is published to see if something may be
tucked away in it that affects his property interests.  We
have before indicated in reference to notice by publication
that, "Great caution should be used not to let fiction deny
the fair play that can be secured only by a pretty close
adhesion to fact."  *McDonald* v. *Mabee*, 243 U. S. 90, 91.

We hold that the notice of judicial settlement of ac-
counts required by the New York Banking Law § 100–c
(12) is incompatible with the requirements of the Four-
teenth Amendment as a basis for adjudication depriving
known persons whose whereabouts are also known of sub-
stantial property rights.  Accordingly the judgment is
reversed and the cause remanded for further proceedings
not inconsistent with this opinion.

*Reversed.*

Mr. Justice Douglas took no part in the consideration
or decision of this case.

Mr. Justice Burton, dissenting.

These common trusts are available only when the in-
struments creating the participating trusts permit par-
ticipation in the common fund.  Whether or not further
notice to beneficiaries should supplement the notice and
representation here provided is properly within the dis-
cretion of the State.  The Federal Constitution does not
require it here.