OPINION OF THE COURT

Per Curiam.

Order entered September 16, 1981 reversed, without costs, motion granted, final judgment vacated, and petition dismissed.
Appeal from final judgment entered June 5, 1981 dismissed, without costs, as academic.
Petitioner circulated an offering plan for co-operative conversion to residents at premises 101 West 12th Street, Manhattan, on or about November 23, 1979. That plan, a 188-page soft-cover bound document, contained a notice of *567 election form for eligible senior citizens at page 184. The law requires sponsors of conversion plans to present such election forms so that “eligible senior citizens” who satisfy specified age, income and residency criteria may elect to become nonpurchasing tenants, i.e., persons against whom eviction proceedings will not lie and who may continue in possession as rental tenants (General Business Law, § 352-eeee, subd 1, par [e]; subd 2, par [a]). Tenant herein, a gentleman 87 years of age who has resided in his rent stabilized apartment since 1974, failed to return the form within the prescribed 90-day period then prevailing. When his last lease expired on September 30, 1980, petitioner served a notice of termination and brought holdover proceedings pursuant to section 61 (subd 4, par [d]) of the Code of the Real Estate Industry Stabilization Association of New York City, Inc. Shortly after receipt of the notice of termination, tenant did mail an executed senior citizen election form to the petitioner, concededly over six months after the conversion plan had been declared effective. Petitioner implicitly rejected that tender as untimely and prosecuted this proceeding to final judgment. The Civil Court, reaching its conclusion “with regret”, found the evidence “overwhelming” that tenant had been notified of his rights in accordance with the statute and recommended the enactment of legislation “to more adequately protect the rights of eligible senior citizens and the handicapped”.
We defer to the trial court’s finding that the offering statement itself was effectively “provided” to the tenants of record (General Business Law, § 352-eeee, subd 3, par [b]), including this tenant, notwithstanding his claims of nonreceipt. As to the senior citizen election form, the statute is not specific as to the precise manner that paper is to be served, other than the provision that it be “presented” to the tenants by the offeror (General Business Law, § 352-eeee, subd 1, par [e]). Where valuable property rights are at stake, elementary notions of due process command that notice reasonably calculated under all the circumstances to apprise interested parties of their right to respond be afforded (Mullane v Central Hanover Trust Co., 339 US 306, 314-315; Matter of Nationwide Mut. Ins. Co. [Monroe], 75 AD2d 765). The notice must be of such nature as is *568 reasonably certain to convey the required information to those affected, and should be tailored to the capacities and circumstances of those to whom it is directed. “[D]ue process is flexible and calls for such procedural protections as the particular situation demands.” (Morrissey v Brewer, 408 US 471, 481.)
Applying these standards, we hold that the manner in which the sponsor incorporated the election form within its offering plan fell short of that which was necessary to afford senior citizens minimally adequate notice of its existence and purpose. In this regard, it is noted that the election form, inserted at the very back of the volume containing the offering statement, was not perforated and did not, on its face, indicate to whom it was to be returned, if at all. That information, as well as information describing the rights of eligible senior citizens generally, was presented at another part of the offering statement. Eligible senior citizens should not be asked to wade through a complex morass of legal and financial material incident to the conversion, and to piece together separated parts of the proposed plan, in order to ascertain what their rights are and how they may be exercised. If the election form is to be included within the plan, and it is arguable whether this is the most effective method of alerting senior citizens of their option to elect to remain in possession as nonpurchasers, it should at least be highlighted together with a warning, in plain language, that a failure to timely return it could result in ultimate eviction. In circumstances where the purpose of service is to give notice of rights and where the time to respond is limited, notice must be properly served and not concealed (Matter of Nationwide Mut. Ins. Co. [Monroe], supra).
Our evaluation of the adequacy of petitioner’s presentment proceeds in the light of the fact that senior citizens are a class the Legislature has expressly singled out for protection in the context of the co-operative conversion process. In the City of New York, “the position of non-purchasing tenants who are sixty-two years of age or older is particularly precarious by reason of the limited financial resources of many such persons, the physical limitations of many such persons, and the long-term attachments that *569 many such persons have to the neighborhoods in which they presently reside” (L 1979, ch 432, § 1). Those who are unable to purchase their apartments will be forced to find new accommodations in an increasingly tight rental market, at a time of life when the ability to cope with a dislocation of this magnitude is diminished. The tenant before us is of advanced age and testified that he has not had any earnings since 1972. It is obvious that he is not in a position to move and not in a position to purchase: “How can I buy? I’m 87 years old. What do I want to buy property for?” The fact that he was aware the conversion process was underway does not mean he was aware that an election form had to be filed so that he could continue in possession. The sponsor was under a duty to apprise him of that essential fact and in a manner most reasonably calculated to do so. This the sponsor failed to do.
Tierney, J. P., Riccobono and Sullivan, JJ., concur.