IRVING, J.,
dissenting.
¶ 19. The majority finds that an order, continuing a hearing commenced pursuant to process by a Rule 81(d)(5) summons, which did not contain the date, time, and place of the continued hearing was sufficient to give the chancery court continuing jurisdiction to dispose of the Rule 81 matter. In my opinion, the majority errs in this regard; therefore, I respectfully dissent.
¶ 20. Rule 81(d)(2) of Mississippi Rules of Civil Procedure provides, inter alia, that actions for contempt shall be “triable 7 days after completion of service of process in any manner other than by publication. ...” M.R.C.P. 81(d)(2). Rule 81(d)(5) of Mississippi Rules of Civil Procedure provides in part:
Upon the filing of any action or matter listed in subparagraphs (1) and (2) above, summons shall issue commanding the defendant or respondent to appear and defend at a time and place, either in term time or vacation, at which the same shall be heard. Said time and place shall be set by special order, general order or rule of the court. If such action or matter is not heard on the day set for hearing, it may by order signed on that day be continued to a later day for hearing without additional summons on the defendant or respondent.
(emphasis added).
¶ 21. On August 29, 2000, Joan filed a contempt action against David. A Rule 81(d)(5) summons was promptly issued and served on David on the same day that the contempt action was filed. The summons specified that the trial of the contempt matter would be held on September 5, 2000, at 9:00 a.m. at the DeSoto County courthouse. On September 5, 2000, an agreed preliminary injunction, which does not bear the signature of the parties, was entered. The agreed preliminary injunction did not set a date, place, or time for a hearing on the merits of the contempt action, but the docket sheet reflects that an order of continuance was also entered on the same date as was the agreed preliminary injunction.[2] The record reveals *626 that on October 2, 2000, an administrative order, setting the case by agreement for trial on November 15, 2000, was executed and entered. This order is signed by David and counsel for Joan.
¶ 22. In the meantime, on November 13, 2000, David, acting pro se, filed a counterclaim and a petition for contempt against Joan. Also, the docket sheet reflects that on November 3, 2000, David had several subpoenas issued for witnesses. Although the record does not indicate the return date of the subpoenas, presumably the subpoenas were returnable to the November 15 trial date.[3]
¶ 23. On November 25, 2000, Chancellor Dennis M. Baker signed an order of continuance and recusal which states in pertinent part:
This matter came on for hearing on the 15th day of November, 2000, by Order of Continuance of this Court on October 2, 2000, on the Petitioner’s Petition for Contempt before the Honorable Dennis M. Baker, Chancellor. Upon arguments by Petitioner’s attorney, Martin Zum-mach, and the Respondent, acting pro se, the Court hereby orders the following:
1.This Cause is continued for thirty days to allow the Respondent to obtain legal counsel. The Respondent must obtain and have counsel file an entry of appearance by December 15, 2000, otherwise continue pro se.
2. Due to a possible attack on the validity on the Judgment for Divorce by the Respondent, Chancellor Dennis M. Baker hereby recuses himself from said case, thereby assigning the matter to Chancellor Percy Lynehard who approved the original Judgment of Divorce February 24, 1997, for a resolution of all issues pending and properly before the Court.
3. Counsel for the Petitioner shall contact Chancellor Lynchard’s court administrator for the scheduling of a trial date.
Located in the clerk’s papers, following the above order, is the following certificate of service signed by Joan’s counsel, Martin Zummach:
The undersigned does hereby certify that he has this day:
Placed a true and correct copy of the foregoing in the U.S. Mail, First Class postage prepaid, addressed to:
David H. Vincent, Respondent
887 Valley Springs Dr.
Southaven, MS 38671
on this 22nd day of November, 2000.[4]
(emphasis added).
¶ 24. The next entry in this case is a motion for trial setting which was filed on February 21, 2001, by Greg Meek, counsel for Joan.[5] Also filed at that time was a notice of motion advising that the motion for trial setting would be brought on for hearing on February 26, 2001. A certifi *627 cate of service at the bottom of the notice of motion, signed by Meek, indicates that the motion and notice were served on David by U.S. mail on February 21, 2001.
¶25. On February 26, 2001, an order setting the case for trial on March 29, 2001, and bearing Meek’s signature as counsel for plaintiff, was signed by Chancellor Percy Lynehard. The order was entered the following day. There is nothing in the record indicating that this order was served on David, and the order states that the defendant (David) “failed to appear for motion for trial setting.”
¶ 26. On March 29, 2001, in David’s absence, Chancellor Lynehard heard Joan’s petition for contempt and on April 6, 2001, entered an order finding David in contempt for failure to pay child support in the amount of $21,560. Chancellor Lyneh-ard also ordered David to pay Joan $6,080 in attorney’s fees.
¶27. On April 16, 2001, David, acting pro se, filed a motion, pursuant to Rule 59 of the Mississippi Rules of Civil Procedure, seeking a new trial or a reopening of the hearing for receipt of additional testimony. In the motion, David alleged that he did not know that his presence was required at the hearing on the motion for trial setting, that he thought the court would advise him of the trial date set by the court, that he made several attempts, without success, to determine the trial date, that he had just learned that the matter had been heard on April 6, 2001, and that he believed that he had a meritorious defense to the matter.
¶ 28. On May 24, 2001, Attorney D. Russell Jones, Jr. filed a notice of intention to bring David’s pro se motion before the court on May 29, 2001. Russell entered his appearance on David’s behalf on June 4, 2001, and on July 8, 2001, filed a separate motion for a new trial or to reopen the case. Russell’s motion emphasized that David had not received notice of the hearing which occurred on March 29, 2001, and that the court could grant relief pursuant to Rule 59 of the Mississippi Rules of Civil Procedure.
¶ 29. On August 9, 2001, Chancellor Lynehard entered an order denying the motions for a new trial or to reopen the case. The chancellor did not issue an opinion explaining the denial. His order stated that the court had considered the motion and found that the motion was not well taken and should be overruled. This appeal emanates from this denial.
¶30. The facts set forth above bring several observations into focus and mandate the conclusion that the trial court committed reversible error when it heard Joan’s petition on March 29, 2001, without notice to David. These observations and the inevitable conclusion that David was denied due process is what I next discuss.
¶ 31. Chancellor Baker had the authority to try the contempt matter at the time and place set forth in the Rule 81(d) summons which was served on David on August 29. In the parties’ brief, they indicate that that time was September 5. The case was not heard on that day. Instead, the parties agreed to a preliminary injunction, and the case was apparently set, by order entered on that day which was the return day of the Rule 81(d) summons, for trial on October 2. On October 2, pursuant to the Rule 81(d) summons and the order signed on the return day of the summons continuing the case until October 2, Chancellor Baker still had the authority to hear the contempt matter. M.R.C.P. 81(d)(5). However, the matter was not heard on October 2, and an agreed administrative order was entered continuing the matter for hearing on November 15. So far so good. On November 15, the matter could have been heard by Chancellor Baker pursuant to the Rule 81(d)(5) summons and *628 the orders continuing the matter to new dates when the matter was not heard on the initial date set forth in the Rule 81(d)(5) summons.
¶ 32. On November 15, the chancellor was still empowered to act pursuant to the authority of the Rule 81(d)(5) summons and the orders of continuance which had been entered timely in accordance with the requirements of Rule 81(d)(5). However, the contempt matter was not heard on November 15 nor was an order entered on November 15 continuing the matter for hearing on a specific date and at a specific time and place. The trial court’s failure to sign an order on November 15, continuing the matter to another day certain, terminated the court’s authority to act at a later date pursuant to the initial Rule 81(d)(5) process.
¶ 33. The order signed by Chancellor Baker on November 25 did not carry with it the authority to act pursuant to the initially-acquired Rule 81(d)(5) process because first, the order was not entered on November 15 and second, the order did not contain a new date, time, and place for the continued hearing. M.R.C.P. 81(d)(5). Therefore, David was entitled to new notice of any hearing to be held after November 15, 2001.
¶ 34. It is hard to decipher the basis for the majority’s conclusion that David, on these facts, was not denied due process. Apparently, the majority interprets Rule 81(d)(5) as permitting the trial of a Rule 81(d)(2) matter on a date that is neither specified in the Rule 81(d)(5) summons nor contained in an order, entered on the return date of the summons, continuing the matter to another date, time and place. Such a construction of Rule 81(d)(5) is, without doubt, contrary to the plain meaning of the rule, as well as the body of Rule 81(d)(5) ease law. The case law is what I next discuss.
¶ 35. In Caples v. Caples, 686 So.2d 1071 (Miss.1996), a case which the majority seems to both rely upon and attempt to distinguish at the same time, a former husband challenged the trial court’s granting of a former wife’s request for child custody modification. Amongst the former husband’s assignments of error was the trial court’s failure to take sufficient steps to ensure that he was provided reasonable notice and an opportunity to be heard at the hearing wherein the modification was granted. Id. at 1074.
¶ 36. The former husband (Edgar) and the former wife (Gwendolyn) were granted a divorce from a trial court in Texas. Id. at 1071. The decree ordered joint custody of the parties’ minor son and gave Gwendolyn physical custody of the child. Id. On May 18, 1993, Gwendolyn filed a complaint for modification in a Mississippi chancery court. Caples, 686 So.2d at 1072. “Edgar answered the complaint and [filed a] motion to dismiss, claiming that the Mississippi court lacked jurisdiction.” Id. A hearing was held on August 4, 1993, which resulted in an order of a continuance, pending a decision by the Texas trial court to waive jurisdiction to the Mississippi court. Id. Edgar attended this hearing. Id. at 1074.
¶ 37. “The [chancery] court reconvened on January 18,1994. Edgar, however, was not present.” Id. at 1072. At this hearing, counsel for Gwendolyn filed an order from the Texas court waiving jurisdiction in favor of the Mississippi court. Id. Providing the only testimony at the hearing, Gwendolyn submitted evidence of a material change in circumstances, and the court ordered modification of the Texas joint custody decree. Id.
¶ 38. Edgar filed a motion for a new trial which was denied on February 24, *629 1994, by the chancery court. Edgar appealed. Id.
¶ 39. On his appeal to our supreme court, Edgar asserted that the [Mississippi] chancery court did not take sufficient steps to ensure that he was provided reasonable notice and an opportunity to be heard regarding the hearing scheduled for January 19, 1994, consistent with Mullane v. Central Hanover Bank & Trust Company, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Id. at 1074. The record [indicated] that Edgar did receive notice and a summons on July 2,1993, via certified mail as to Gwendolyn’s action to modify child custody. Id. Pursuant to this notice Edgar did appear before the Mississippi chancery court on August 4,1993. Id. The Capíes court held that the chancery court acquired continuing personal jurisdiction over the parties. Nevertheless, our supreme court explained:
Edgar’s claim that he received insufficient notice has merit because the notice granted did not comply with Rule 81 of the Mississippi Rules of Civil Procedure. Upon filing an action for modification of child custody, Rule 81(d)(5) states that a “... summons shall issue commanding the defendant or respondent to appear and defend at a time and place, either in term time or vacation, at which the same shall be heard.” In addition, the summons will not require an answer, but the court may require an answer. M.R.C.P. 81(d)(4). While Edgar was served a summons, it did not comply with 81(d) M.R.C.P. because it did not indicate the time and place the complaint would be heard, and the summons required Edgar to mail or hand deliver a written response to the complaint. In spite of the improper summons, Edgar did appear before the Chancery Court of the First Judicial District of Hinds County, Mississippi on August 4, 1993. This hearing, however, was recessed without any discussion of the merits because the trial judge found insufficient authority to assume jurisdiction. No order was entered that day setting a specific date for further proceedings.
Caples, 686 So.2d at 1074. Most importantly, the court stated: “The proper procedure under Rule 81 would have been to serve Edgar an additional Rule 81 summons. A Rule 81 summons would have outlined the time and date for the trial court hearing and informed Edgar.” Id.
¶40. The court held that the notice issued to the husband was inconsistent with Rule 81 M.R.C.P. and therefore was defective. Consequently, the court reversed and remanded the case. Id.
¶ 41. First, I am obligated to point out that the majority has misquoted the facts in this case. The majority says: “In the instant case, Joan served David with a Rule 81 summons and David appeared at the ordered date and time. On that day, Chancellor Baker, to whom the case was assigned, signed an order recusing himself and transferred the case to Chancellor Lynchard.... ” Majority opinion at page 4(118). As previously stated, Chancellor Baker signed an order on November 25, 2000, transferring the case to Chancellor Lynchard. November 25 was neither the return date of the Rule 81 summons nor the date specified in an order of continuance signed on the return date of the summons.
¶ 42. Second, I am perplexed by the majority’s conclusion that Rule 81 “does not require a new date to be set [in an order of continuance], only for the continuance to be in a signed order.” Such a construction contradicts the plain language of Rule 81(d)(5) which says, “If such action or matter is not heard on the day set for hearing, it may by order signed on that day be continued to a later day for hearing *630 without additional summons on the defendant or respondent.”
¶ 43. Third, I am even more perplexed by the majority’s attempt at distinguishing Capíes. The majority distinguishes Capíes on the basis that the divorce decree in Capíes was granted by a foreign court and the respondent in Capíes had not appeared before a Mississippi court until the date of the modification hearing, while in our case, the divorce was granted by a Mississippi chancery court, thereby giving the Mississippi chancery court continuing jurisdiction. The majority further distinguishes Capíes on the basis that initial process on David was via a Rule 81(d)(5) summons while process on the Capíes respondent was by a Rule 4 summons.
¶ 44. Again, the majority has misstated a portion of the facts. In Caples, Edgar, the respondent, appeared before the Mississippi chancery court on August 4, 1993. Caples, 686 So.2d at 1074. Edgar had even answered the complaint and filed a motion to dismiss, claiming that the Mississippi court lacked jurisdiction to hear the modification. Id. at 1072. The modification hearing in Capíes was not held until January 18, 1994, and contrary to the majority’s assertion, Edgar was not at that hearing, even though he had appeared at a prior hearing. Id. Moreover, the Capíes court held that Edgar’s appearance before the Mississippi chancery court on August 4, 1993, conferred continuing personal jurisdiction over Edgar. Id. at 1074.
¶ 45. It is true, however, as the majority says, that in our case initial process was by Rule 81(d)(5) summons while in Capíes, process was via Rule 4 summons. However, this distinction neither compels nor permits the result reached by the majority-
¶ 46. What Capíes makes clear is that in Rule 81(d)(2) matters, process must be acquired in accordance with Rule 81(d)(5) before a chancery court is authorized to act, even if the chancery court otherwise has continuing personal jurisdiction. As I have previously pointed out, in our ease, the chancery court acquired the authority to act on September 5, 2000, the return date of the Rule 81(d)(5) summons. Likewise, it possessed continuing authority to act in this contempt matter at any time after September 5, without additional notice to David, provided (1) that an order of continuance was signed on September 5 continuing the hearing to a new date, time and place, and (2) that all additional orders of continuance were signed on the date of a previously-continued hearing, and (3) that the hearing was ultimately held on a date and at a time and place which had been previously specified in one of the orders of continuance signed on a scheduled hearing date. That was not done here. As I have already observed, on November 15, 2001, the date of the last scheduled hearing, no order of continuance was signed. The fact that the trial court had continuing personal jurisdiction over David is of no consequence. The trial court in Capíes had the same over Edgar.
¶ 47. The conclusion is inescapable that, prior to action by Chancellor Lynchard, David was entitled to either a new Rule 81(d)(5) summons, as instructed by the Capíes court, or, at a minimum, actual notice that the hearing would be held on March 29, 2001. It is undisputed that he received neither. Consequently, for the reasons presented, I respectfully dissent and would reverse and remand this matter for a new hearing.
KING AND SOUTHWICK, P.JJ., AND BRIDGES, J., JOIN THIS SEPARATE WRITTEN OPINION.

. David indicates in his brief that the matter was continued to October 2, 2000.

. David indicates in his brief that he appeared at the November hearing date with nine witnesses, and Joan appeared with her attorney and three witnesses.

. It is noteworthy that this certificate of service bears a service date of November 22, 2000, when the order, which it purports to serve, was not signed by Judge Baker until November 25, 2000.

.Counsel for Joan says he sent a letter to David on January 31, 2001, transmitting a copy of a proposed agreed order setting the case for trial on February 28, 2001. Counsel has included a copy of the letter in the record excerpts which he filed with the clerk of this court. However, the docket sheet in the office of the clerk of the trial court does not reflect that a copy of this letter was ever filed in the trial court.