In re: DIET DRUGS (PHENTER-
MINE/FENFLURAMINE/DEXFEN-
FLURAMINE) PRODUCTS LIABILI-
TY LITIGATION,

**Judith Jahnke, Individually, and as
Personal Representative of Robert
Jahnke, Deceased, Appellant.**

No. 03–1113.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit LAR
34.1(a) March 8, 2004.

Decided March 10, 2003.

Thomas L. Grisham, Grisham & Law-
less, Albuquerque, NM, for Appellant.

Fred S. Longer, Arnold Levin, Michael
D. Fishbein, Levin, Fishbein, Sedran &
Berman, Philadelphia, PA, Peter L. Zim-
roth, Arnold & Porter, New York, NY, for
Appellee.

Before SLOVITER and NYGAARD,
Circuit Judges, and OBERDORFER,*
District Judge.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant Judith Jahnke appeals from
the order of the District Court denying her
motion to opt out of a class settlement and
affirming the dismissal of her action
against Wyeth–Ayerst Laboratories
("Wyeth"), formerly known as American
Home Products. Jahnke filed a wrongful
death claim after her husband committed
suicide, claiming that her husband's in-
gestion of the diet drug Redux, produced
by Wyeth, caused neurotoxicity which led
to her husband's depression and ultimate
suicide. Pursuant to a class action settle-

---

* Honorable Louis F. Oberdorfer, United States
District Judge for the District of Columbia,
sitting by designation.

ment that specifically released Wyeth from liability for neurotoxicity claims, and Jahnke's failure to opt out of the class by March 30, 2000, the District Court dismissed Jahnke's case and denied her motion to opt out of the nationwide settlement. On appeal, Jahnke contends that because she never received individual notice of the pendency of the class action, she was never a member of the class or bound by the settlement agreement reached in the class action.

## I.

Inasmuch as we are writing solely for the parties involved, we recite only those facts relevant to the issues on appeal. In September 1997, Wyeth withdrew two diet drugs, Redux and Pondimin, from the market as a result of concerns that the drugs were associated with heart valve leakage. Following the withdrawal, thousands of civil actions were filed in state and federal courts throughout the nation. On October 12, 1999, these claims were consolidated and a class action, *Brown v. American Home Products,* was filed in the United States District Court for the Eastern District of Pennsylvania as a vehicle to combine all Redux and Pondimin claims for settlement purposes. On November 18, 1999, representatives for the parties reached a settlement agreement ("Settlement"), in which Wyeth agreed to pay approximately $3.75 billion in present value into a trust to be used to provide benefits to members of the *Brown* class.

After reviewing the Settlement, the District Court entered an order dated November 23, 1999, conditionally approving the Settlement and providing for extensive notice with two parts. The first part of the plan called for extensive multimedia notice designed to apprise class members of the existence of the Settlement and their right to opt out no later than March 30, 2000.

This multimedia notice included a television message broadcast 106 times on network television over a period of five weeks and 781 times on cable networks over six weeks, and a print notice in local and national newspapers and in widely-distributed magazines such as *Parade, People, Time, Better Home & Gardens,* and *Good Housekeeping,* which ran repeatedly between January and March 2000. The second part of the plan consisted of a detailed notice package that was mailed both to class members who had requested copies by registering over the toll-free telephone number website advertised, and to class members whose names were known or knowable, including those who had filed lawsuits against Wyeth. Approximately 735,000 notice packages were mailed to class members who had requested notice, and 287,000 notice packages were mailed to those whose names were in possession of the parties.

A professional mailing house, Smith–Edwards–Dunlap, was retained by class counsel to mail the notice packages, and Wyeth provided the mailing house with a list of the identified members of the class and their attorneys. Wyeth submitted the affidavit of Marcus R. McClosky, an attorney associated with Arnold & Porter, retained by Wyeth in this action, that states, "Judith Jahnke's name and address was among the names and addresses of Class Members that I provided to the mailing house for mailing of the notice of the Settlement Agreement," and recites both her address and the address of her attorney. App. at 137–38. Jahnke contends that neither she, nor her attorney, ever received such notice.

Jahnke had filed suit against Wyeth in a New Mexico state court on September 20, 1999, before the class action was filed. Wyeth answered her complaint on October 25, 1999, which was almost two weeks after

the class action was filed, but it made no mention of the class action in its answer. Jahnke's case was removed to federal court on May 3, 2000, and on October 4, 2000, it was included in the class action in the Eastern District of Pennsylvania. On July 2, 2002, the special discovery master suggested that Jahnke's case be dismissed pursuant to the Settlement and on December 13, 2002 it was so dismissed. Jahnke argues that even though she filed suit in 1999, she never received notice of the Settlement until September 2000, almost six months after the opt out deadline had expired.

Jahnke does not dispute that Wyeth's attorneys provided the mailing house with her name and address, or that the notice plan was constitutional. Instead, her challenge is to the procedure by which she became a member of the class. The only issue on appeal is Jahnke's argument that her due process was violated because Wyeth failed to show that it actually mailed the notice package to her. The District Court had subject matter jurisdiction based on diversity of citizenship. We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291, and we exercise plenary review over questions of notice and due process. *United States v. One Toshiba Color Television*, 213 F.3d 147, 151 (3d Cir.2000) (*en banc*).

## II.

Federal Rule of Civil Procedure 23(c)(2) requires that notice to the members of a class must be "the best practicable notice under the circumstances, including individual notice to all members who can be identified through reasonable efforts."[1] The rule further mandates that the notice shall advise class members that "the court will exclude the member from the class if the member so requests by a specified date," and that "the judgment, whether favorable or not, will include all members who do not request exclusion...." Fed. R.Civ.P. 23(c)(2)(A)-(B). The Supreme Court has concluded that "the import of this language is unmistakable. Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *see generally Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (establishing framework for evaluating adequacy of notice for due process purposes, holding that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

It is undisputed that the notice plan in this case provided for individual notice. Jahnke, however, would require a showing of actual notice. The Supreme Court has made clear that it has not "required actual notice," and stated that the appropriate inquiry involves the "reasonableness and hence the constitutional validity of any chosen method." *Dusenbery v. United States*, 534 U.S. 161, 171, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) (quoting and applying the standard in *Mullane*, 339 U.S. at 315, although the issue involved notice to an inmate in a forfeiture proceeding). In the same vein, we have previously stated in a forfeiture action involving notice to inmates that

> we are not prepared to require the government to bear the evidentiary burden of establishing actual notice in all cases.

---

[1] Effective December 1, 2003, subsection (c) of Rule 23 was amended to substantially revise the notice provisions, but because these provisions went into effect after the dismissal of appellant's complaint, we will consider the provisions in effect at that time.

Such a demonstration could impose needless litigation costs.... Moreover, *the Supreme Court has never required the demonstration of actual notice.* At all events, the jurisprudence of constitutional notice appropriately focuses not on what actually occurred, but rather on the procedures that were in place when notice was attempted.

*United States v. One Toshiba Color Television,* 213 F.3d 147, 150 (3d Cir.2000) (*en banc*) (emphasis added).

Notwithstanding that actual notice is not a prerequisite to constitutionality, Jahnke contends we must decide whether "the inability of Wyeth to certify or show that such notice was given [ ] requires the reversal of this case." Appellant's Reply Br. at 4. She further argues that the "mailing house could and should have kept a computerized record of the names of all persons to whom notices were actually sent in such a fashion as they might have been able to certify that the notice was actually posted to any given individual...."[2] Appellant's Reply Br. at 8–9.

Wyeth contends that it is unable to certify that the individual notice package was actually sent to Jahnke, and the District Court noted, "While [the mailing house] sent the required information to almost 1,000,000 individuals and their counsel, it is not possible to certify that the notice to Ms. Jahnke or her lawyer was actually posted." App. at 17. The mailing house supervisor who was charged with overseeing the notice mailing, Peter Pakradooni, testified at the fairness hearing that the mailing house had mailed notices to the names and addresses of the class members provided him by Wyeth and class counsel. Indeed, the District Court concluded after the fairness hearing that "[n]otice packages were transmitted by first class mail

to each of these 287,108 individuals" who were known because they had "filed claims ... or because their identity was reflected in AHP's corporate records." App. at 89. Wyeth filed one of its attorneys' affidavits that the names and addresses of Jahkne and her counsel were among those provided to the mailing house. The record contains sufficient proof that the notice plan was implemented properly. This case is therefore unlike that in *Greenfield v. Villager Indus., Inc.,* 483 F.2d 824 (3d Cir. 1973), relied on by Jahnke, where we held that when the stated intention to mail individual notice was not implemented and such individual mailing was replaced solely with publication notice all subsequent settlement orders were invalid.

A requirement that Wyeth make a further showing would jeopardize the utility of class action settlements which are made possible because those class members who do not opt out are bound by its terms. As counsel for Wyeth notes, "Defendants would be strongly discouraged from entering into such settlements if, despite a final determination that notice procedures were constitutionally sufficient, class members could be excused from the judgment...." Appellee's Br. at 30–31. Moreover, if Jahnke were to prevail, other class members who failed to opt out by the relevant deadline would be encouraged to revive their claim.

The District Court attempted to eliminate any unfairness that might have resulted from Jahnke's failure to receive individual notice by considering whether her failure to opt out in a timely fashion was due to "excusable neglect." *See In re Cendant Corp. Prides Litig.,* 311 F.3d 298, 300 (3d Cir.2002) (stating that "the proper standard to be applied in determining

---

2. Because we find that such certification is unnecessary as a matter of law, we need not

consider whether it is in fact possible to certify the mailing of individual packages.

whether tardy claims were entitled to share in the settlement proceeds is excusable neglect") (internal quotation and citation omitted). Jahnke concedes she had actual notice by September 2000, when local counsel for Wyeth sent Jahnke's attorney a copy of the order approving the Settlement. Although it was almost six months after the opt-out deadline, Jahnke did nothing to extricate her case from the Settlement at that time. It was a year and a half later that Jahnke's counsel filed an expert report in March 2001. Wyeth promptly notified counsel that because Jahnke never opted out of the class, her lawsuit had been dismissed pursuant to the Settlement, which released Wyeth from liability for neurotoxicity claims. The District Court noted that despite this, no "further action was taken to undo the dismissal until the service of the [motion that is the subject of this appeal], over a year later, on July 26, 2002." App. at 18–19. While failure to receive individual notice may have formed the basis of excusable neglect before September 2000,[3] Jahnke presented no evidence to justify the neglect after that date.

## III.

## CONCLUSION

For the reasons set forth above, we will affirm the District Court's dismissal and denial of Jahnke's motion to opt out of the class settlement.

---

**3.** The District Court indicated that it was unlikely that neither Jahnke nor her attorney had notice given "the extensive publicity about the settlement, throughout the nation and in New Mexico." App. at 19. We agree with Wyeth that it is significant that Jahnke presented no evidence or argument that she or her counsel were unaware of the Settlement or of the opt-out deadline before it expired.