RAMIREZ, J.
(dissenting).
I respectfully dissent because the majority approves a procedure that denied the ward’s wife due process of law.
The animus between Gladys Vargas, the ward’s wife, and the guardian, Barbara Acosta, who is the ward’s daughter from a previous marriage, is obvious even from the sparse record before us. The court held a hearing on December 14, 2004, *395 when the prior guardian, Michael Messer, filed a petition to resign as guardian. Messer apparently sought to resign in frustration after accumulating fees in excess of $20,000, and failing to mediate the adversarial positions of the Vargas and Acosta families.
At the time of the hearing, the wife was visiting with the ward Monday through Friday and the daughter on weekends, apparently to avoid each other. The daughter sought to be appointed successor guardian and the wife objected, preferring the court appoint someone neutral who would protect access to the ward by both sides. The court asked if the daughter could cope with the duties of guardian if the ward was in Miami and the daughter was on the west coast of Florida. The daughter’s attorney replied that Acosta was an hour and a half away and she had a cousin, Raymundo Tamayo, a doctor in Cuba who lived in Miami and was studying to take the medical boards. Tamayo was only five minutes away in case of an emergency. The court appointed Acosta because she had taken a guardianship course and was “only an hour and a half away.”
On February 4, 2005, the wife’s attorney, Candis Trusty, served an Emergency Motion for Reconsideration of the appointment of Acosta and an Emergency Motion to Stay Discharge. Counsel complained that counsel for the guardian, Gladys Bal-leste, had agreed to submit to Trusty a draft of the proposed order before submitting it to the judge for signature, only to discover on January 4, 2005, that an order had been entered. Not only was Trusty not consulted prior to its execution, she was not even served with a copy after it had been signed. The order did not address any of the wife’s concerns about access to the ward.
The Emergency Motion resulted in a hearing that same day. On February 7, 2005, the court entered an order stating that the court required medical evidence on the issue of whether the ward’s needs could be served in a private home. “If the medical evidence supports the best interest of the [w]ard being in a private home, then this Court will hear further testimony about where the [wjard can reside.”
For reasons not apparent on the record, the court, on February 28, 2005, entered an order sua sponte re-affirming the authority of the guardian and holding that the guardian “has the authority to do what is in the best interest of the [wjard.” The next day, the court entered an order denying the wife’s emergency motion to prevent a change of the ward’s residence and held that “Barbara Acosta is permitted to change the [wjard’s residence to the Rehabilitation & Heart Care of Cape Coral, Florida, forthwith.”
That same day, counsel for the wife served and filed a hand-written motion to vacate the March 1 order, (1) protesting that she had been denied access to the court, (2) that the order was entered without hearing any medical testimony or testimony from interested persons in direct contravention of the February 7th order; and (3) that the guardian had failed to comply with section 744.2025, Florida Statutes (2004).
Counsel for the guardian filed a handwritten response stating that she had received a call from the judge’s judicial assistant informing her that the ward’s facility was going to discharge him and that the guardian had to take the ward. She claimed that the wife had refused to have the ward reside with her at the ward’s home. She also argued that the court on its own had expanded the guardian’s authority to do what was in the best interest of the ward. The guardian had obtained placement for the ward at a facility a block away from the guardian’s home. Finally, *396 counsel stated that the ward was scheduled to be transferred that same day at 1:00 p.m.
A fifteen-minute hearing was held, after the fact, on March 7, 2005, at which the parties were instructed that no evidence would be taken. The judge stated that he had placed a call to the ward’s doctor, but the doctor would not take the call, he was too busy. The judge was told that the ward was going to be removed from the facility within the hour. “When I entered the order [presumably the sua sponte February 28, 2005 order], they told me that he was absolutely going to be removed.” The hearing ended with the court asking the guardian how far away was Cape Coral and the guardian answering that it was two hours away. The transcript does not reflect any ruling, but on March 30, 2005, the court entered an order denying the motion to vacate.
Section 744.2025(1), Florida Statutes (2004), dealing with a change of a ward’s residence, states:
(1) PRIOR COURT APPROVAL REQUIRED. — A guardian who has power pursuant to this chapter to determine the residence of the ward may not, without court approval, change the residence of the ward from this state to another, or from one county of this state to another county of this state, unless such county is adjacent to the county of the ward’s current residence. Any guardian who wishes to remove the ward from the ward’s current county of residence to another county which is not adjacent to the ward’s current county of residence must obtain court approval prior to removal of the ward. In granting its approval, the court shall, at a minimum, consider the reason for such relocation and the longevity of such relocation. (Emphasis added).
The statute does not give any guidance as to what is the “minimum” a court should do before making the decision to change a ward’s residence, but I cannot agree that what occurred in this case satisfied either the language or intent of the statute. “An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.” Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Furthermore, courts should make their decisions based on a complete record after notice and an opportunity to be heard is given to all interested persons. Such was not the case here.
The trial court did not hold a hearing. Thus, there is no judicial record to support the change in the ward’s residence. The majority finds, without explanation, that the statutory requirements were met by “[considering] the reason [given] for ... relocation.” Op. at 394. Does this mean that the court “considered” the reasons in private? Or does the majority mean that the court “considered” the reasons at the after-the-fact hearing on March 7th? When did the trial court “consider” placing the ward in any local facility?
The majority states that there was no dispute that the ward’s needs would be best met by living in a facility close to the guardian’s home. I find no record support for that statement. I also find no record support for the contrary, but that is the problem. The merits of the move from Miami to Cape Coral were never discussed at the trial level. The only hearing, on March 7, was not to discuss the merits of the move, but to allow the wife an opportunity to vent. Only the process, or lack thereof, was discussed.
*397 It is not clear whether Gladys Vargas was given any notice that her husband was being moved to Lee County. But it is clear that she never had an opportunity to be heard. The only hearing that was held was after the fact, and the transcript clearly shows that, despite its February 7th order, the court never spoke with any health care professional. The wife was prevented from presenting to the trial court any evidence regarding her husband’s needs, the availability of local facilities that could meet his needs, as well as any other evidence that would assist the trial court in making an informed decision on what would be in the ward’s best interest.
Furthermore, I find no authority for the court’s delegation of authority to the guardian in its sua sponte February 28th order “to do what’s in the best interest of the [w]ard.” On the contrary, section 744.2025(1), Florida Statutes, specifically provides that the “court” shall consider the reason for the relocation. See State Farm Mut. Auto. Ins. Co. v. Kendrick, 780 So.2d 231, 233 (Fla. 3d DCA 2001) (“A trial court cannot delegate the sole authority to perform ‘a purely judicial function.’ ”), quoting from Larson v. State, 572 So.2d 1368, 1371 (Fla.1991) (“Even without objection, ... a trial court could not delegate to a probation officer the sole authority to revoke that defendant’s probation, since this is a purely judicial function.”). To vest unfettered authority on the guardian in such a hotly contested case cannot possibly satisfy due process.
I can appreciate the exigencies of the situation where the medical facility was threatening to remove the ward, but it seems that the wife’s counsel filed a handwritten motion before the ward was removed. There was nothing to prevent an emergency hearing taking place at that moment. The right to due process cannot be so casually ignored. Neither appellee’s brief nor the majority opinion cite a single case to justify what happened at the trial level.
Therefore, because I believe the trial court erred in changing the ward’s residence without providing a hearing and without giving the ward’s wife notice and an opportunity to be heard, I respectfully dissent. I would reverse and remand for the trial court to hold a hearing pursuant to section 744.2025(1), Florida Statutes, “to consider the reason for such relocation and longevity of such relocation.”