ROGERS, J.,
concurring.
I agree that Redmond’s complaint does not state facts that support a claim for relief, and I concur in the majority opinion. I write separately, however, to explain my understanding that we are not ruling in such a way as to preclude entirely the possibility of a First Amendment claim based on a state’s acceptance of a private actor’s disallowance of a horse name. If, for instance, Kentucky contracted with a private horse-naming entity that permitted names insulting one political party but not another, a First Amendment claim might well be stated. There is, however, nothing like that alleged in this case.
As a preliminary matter, it appears that the KHRA is a state actor when it accepts the horse-naming determinations of a private contractor, as explained in' Judge Clay’s concurrence. Moreover, it is unlikely that there is state action on the part of the Jockey Club, also for the reasons set forth in Judge Clay’s concurrence. In the end, however, the failure of plaintiff to state a First Amendment claim against either defendant makes it unnecessary for me to decide whether the Jockey Club is a state actor.
In a heavily-regulated industry like horse racing, the state may insist that racehorses have nonduplicative names. This can certainly be done by the state’s reserving the right to approve or reject names, on its own or by contract with a private enterprise. Once the state is (legitimately) in the position of approving or rejecting names, the state may validly seek to associate itself only with names that are not offensive or in bad taste. This is no different from the government’s support of an art museum while retaining the right not to fund highly offensive exhibits. Similarly, the government could commission a statue of a statesman for a public square, while reserving the right to reject an offensive treatment of the personage. See Nat’l Endowment for the Arts v. Finley, 524 U.S. 569, 583-84, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998). Considered this way, the state’s refusal (or acceptance of its private contractor’s refusal) to approve a particularly offensive name, without more, does not, in my view, state a First Amendment claim.
Nothing keeps the horse owner, or any other private person, from informally using an alternate name for the horse. Indeed, Kentucky’s most famous horse, Man o’ War, was nicknamed “Big Red.” See, e.g., Page Cooper & Roger L. Treat, Man O’ War 10 (Westholme Publishing, LLC 2004) (1950). Such freedom on the part of private actors would extend to highly offensive names. Similarly, highly-offensive statuary can be sculpted and displayed by private actors.
It might be, however, that certain government naming decisions, or some standards or procedures used in making those decisions, might conceivably trench on First Amendment concerns. Nothing remotely reaching that level has been alleged in this case, however.
In particular, this case involves the state’s rejection of a government sanction for identifying a horse with the distinct name of a historical figure who was an African-American slave. One could reasonably expect that giving such a name to a chattel animal would be deeply and singularly offensive to African-Americans, in *681 a way that “Jefferson’s Secret,” for instance, would not. If plaintiff has a First Amendment right to government approval of the name in question in this case, it is hard to imagine what name would not be permitted. This cannot be the law.
There is, moreover, no sufficiently alleged due process violation. As a matter of procedural due process, assuming that Redmond has a liberty or property interest, he does not allege that the Jockey Club denied him notice of or an opportunity to be heard with respect to its decision, nor does he allege that the Jockey Club was somehow impermissibly impartial. See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314-15, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Gibson v. Berryhill, 411 U.S. 564, 578-79, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). Instead, Redmond simply alleges that “the denial of Mr. Redmond’s right to use the name ‘Sally Hemings’ is arbitrary and irrational and serves no legitimate state interest.” JA 19 (H 69). It is even more obvious that there is no substantive due process violation alleged in this case. “The contention that the [state actor’s] actions were arbitrary or capricious cannot be sufficient; otherwise judicial review for compliance with substantive due process would become the equivalent of a typical state or federal Administrative Procedure Act.” Bell v. Ohio State, 351 F.3d 240, 251 (6th Cir.2003).